## BROWN vs. CHADSEY.

39b 253
51ad386

In an action for false imprisonment the jury has a right to give damages be-
yond a mere compensation to the plaintiff for his injuries, and inflict a
punishment upon the defendant for his conduct; but not to an arbitrary
amount.

Where the plaintiff was arrested by a police officer, early in the morning, at
the request of the defendant, or upon facts or circumstances of suspicion
communicated by him, and was taken to the police office in Centre street,
New York, where he remained some time, no one appearing to make a com-
plaint against him; and he was then required to appear at a subsequent
hour, 10 o'clock, at which time, no one appearing against him, he was dis-
charged, on his promise to appear again, if required; the plaintiff having
recovered a verdict for $2000 for this arrest and false imprisonment; *Held*
that the damages were excessive, and a new trial was granted.

If a private person takes any part in an unlawful imprisonment of another,
by an officer, he becomes a principal in the act, and is liable for the tres-
pass. But if he merely communicates facts or circumstances of suspicion
to the officer, leaving him to act on his own judgment and responsibility,
he is not liable at all in an action either for malicious prosecution or for
false imprisonment.

Under the code, in an action for false imprisonment, a justification on the
ground that the defendant had reason to suspect that a criminal offense
had been committed by the plaintiff, must be pleaded specially; and the
answer must first show the actual commission of an offense, and then the
cause to suspect the plaintiff of its commission. If less than this is pleaded,
or if the evidence comes short of this, it can only go to the question of
damages.

Where no justification is pleaded, evidence showing grounds for suspecting
the plaintiff of the commission of a crime, is admissible upon the question
of damages only; but upon that point it is material as going to relieve the
defendant from the imputation of having acted from improper motives.

Actions for malicious prosecution and for false imprisonment are essentially
distinct, and require different rules both of pleading and evidence.

APPEAL from a judgment entered at the circuit, on the
verdict of a jury. The complaint alleged that on or
about the 12th day of April, 1857, in the city of New York,
the defendant falsely and maliciously, without any just cause
or provocation, arrested or caused to be arrested, the plaintiff
in the public streets of said city, and forced and compelled
him, the plaintiff, to be taken through divers public streets
of said city, in charge of a policeman, who acted under the

charge, instigation, and direction of the defendant, to a certain police office in said city, known as the Tombs, or City Prison; and that, at the instance, and upon the said malicious and false charge of the defendant, the plaintiff was kept and detained in prison, without any reasonable or probable cause whatever, and contrary to the laws of the state, and against the will of the plaintiff, whereby he was unjustly exposed and injured in his character, credit and circumstances, and was hindered and prevented from performing his necessary affairs and business, and was put to great expense; by means whereof, &c.

The defendant, by his answer, denied all the material allegations of the complaint; and for a further answer, he denied that he caused the plaintiff to be arrested falsely and maliciously. On the contrary, he averred, that he was, at the time of said arrest, the president of the Farmers' Bank of Wickford, in Rhode Island; that he was a director of said bank; that he was also liable and bound for a large amount for the debts of said bank. And he alleged that the plaintiff was a large stockholder in said bank; that he had irregularly and without adequate security, procured a large amount of the circulating notes of said bank; that, at the time set forth in the complaint, the defendant had reason to suspect and believe, and did believe, that the plaintiff had in his possession and control, the circulating notes, and also some of the assets of said bank, procured by fraud and unlawfully, and the use of which by him would tend to the loss and discredit of the said bank, and of the defendant in his said relations; that the movements and actions of the plaintiff were so suspicious and extraordinary, that the defendant was advised by a public police officer of the city of New York, that there was reason to suspect him of having committed a crime, and to be desirous of avoiding detection. Under these circumstances, the defendant acting according to his convictions of what was his duty in the premises, did request the officer to arrest the plaintiff. He averred that this was done quietly, and

Brown *v.* Chadsey.

w thout attracting public observation.  He further averred, that he went, after a short interval, to the police court to attend to the matter, and that he found that the plaintiff had already been discharged, after a very short detention, and no actual imprisonment.  He denied that he was actuated by malice, and he denied that the plaintiff sustained any damage.  He also denied that he caused the plaintiff to be arrested without probable cause.

On the trial, the counsel for the defendant moved to dismiss the complaint, on the ground that the same did not contain facts sufficient to constitute a cause of action.  The motion was denied, and the defendant excepted.  It was proved that the plaintiff was arrested on Sunday morning, April 12, 1857, in Broadway, in the city of New York, at about half past six to seven o'clock, by a public officer, and that he went from there to the Police Court in Centre street, stopping a little while at the Astor House to see a friend; that he remained there some time, no one appearing to make a complaint against him; that he was required to appear at a subsequent hour—ten o'clock; that he did appear at that time, when, no one appearing to make a complaint against him, he was discharged, after being required to give his name and address, and to pass his word that he would appear there if required.

The plaintiff was sworn in his own behalf, and testified: "I live in Boston; am a shipping merchant; have known defendant since the fall of 1855; he was president of the Farmers' Bank of Wickford, Rhode Island; he lives at that place.  I left Boston for New York on Saturday afternoon, April 11th, 1857; went from Boston to Stonington by rail road; took the steamboat from Stonington to New York; arrived at New York, near the Battery, between six and seven o'clock, Sunday morning, April 12th.  I first saw defendant during that journey at Providence.  I next saw him on the boat, a short time after the boat started; we shook hands together, and had some five or ten minutes conversa-

tion; the next I saw of him was on Broadway, on Sunday morning between six and seven o'clock, soon after arriving. I was walking alone, on the west side of Broadway, nearly opposite the head of Wall street; a stranger came up to me; put his hand on my shoulder; saw defendant about five seconds afterwards; he was standing five feet from me at the time. The stranger said, I must arrest you. I asked, for what; he said, for robbery. I asked, robbery of what; he said a bank in Rhode Island; I replied, he must be mistaken; he said, no, I am not; and said, turning round, there is the man by whose orders I arrest you; it was the defendant, Mr. Chadsey. The defendant then stepped forward and said, he has the money in his carpet-bag, reaching hold of my carpet-bag, which I then held in my hand. I remarked, if there was money in my carpet-bag it was unknown to me, and took the keys out of my pocket, unlocked the bag, while standing in the street; both the defendant and the officer examined it, and put their hands into it; defendant said to the officer, "take him in charge." I asked the officer what was to be done; he said he should be obliged to take me to the Tombs. We then went, at my request, to the Astor House, where I wished to see a friend; the officer went with me; we remained at the Astor House a few minutes; then went to the Tombs, (so called;) I mean the police office, in Centre street; remained there about an hour with the officer; the officer's name is Hill; I was discharged about eleven o'clock that morning; after I had been in the police office some time, I went away with the officer; returned at the adjourned sitting of the magistrate, either at 10 or 11 o'clock, I forget which hour. While at the police office, I saw the defendant there, in the vestibule, at the entrance; he was with another person, also an officer; a crowd of people gathered round when my bag was examined in Broadway; nothing was taken from the bag; the defendant did not go to the police office; he immediately left me upon my arrest." The

witness designated officer Hill, present, as the stranger who arrested him.

The following check was shown to the witness :

" $2500 Dolls.   BLACKSTONE BANK, Boston, Dec. 26, 1856. Pay to A. C. Collins, cashier, or order, twenty-five hundred dollars.

No. 5310.   To the Cashier.

(Signed)          CHARLES S. BROWN."

The question was asked, who drew that check?   Answer, "I did."   Question : Has it ever been paid ?   The plaintiff's counsel objected.   Question overruled, and the defendant's counsel excepted.   The counsel for defendant then stated, in answer to the inquiry of the court, as to what was intended to be proved, that it was intended to be shown that the check in question, and another one of the like amount, were given on the day of the date of said check, by the plaintiff to the defendant as president of the Farmers' Bank of Wickford, R. I., and that the plaintiff represented to him, at the time that they were good checks, and drawn against funds of the plaintiff in the banks upon which they were drawn, and would be paid upon presentment ; and that upon the strength of said representations, he obtained $5000 of the bank bills of said bank, which the plaintiff used and put into circulation, and which the bank redeemed ; and that in fact, such representation was false, and that the plaintiff had no funds in the banks upon which said checks were drawn, and never had had, and never kept an account in either of them.   The court overruled the offer, and decided that such evidence was improper.   Exception.

Robert Hill, the police officer by whom the plaintiff was arrested, testified that about half past six on the Sunday morning in question, he was on the Battery and was sent for from the Stonington boat, to arrest a man, and went ; saw the defendant on the gangway of the boat ; pointing to Brown, he said to me, "Could not you arrest him on suspicion ?" "On suspicion of what ?" says I : "Suspicion of robbing a

bank in Rhode Island," he said; I then distinctly asked him if he would charge him with robbing a bank; he did not then say any thing to that. I told him, however, positively, that I would not arrest him, unless he would charge him positively with this offense; I told him what the consequences would be as I understood it; we started off to follow the plaintiff; while we were following him, the conversation was of about the same import, until I arrested him, just before we got to Maiden Lane, in Broadway. I told the defendant I would not have any thing to do with the matter until he made a proper charge, something tangible; he then said, take him in charge for robbing a bank in Rhode Island; I forget the name of the bank, exactly; I then tapped the plaintiff on the shoulder, and told him he was a prisoner."

The plaintiff having rested his case, the counsel for the defendant moved to dismiss the complaint, or for a nonsuit, on the grounds that there was a failure to make out the case stated in the complaint, or any case whatever; that no cause of action was made out against the defendant; that there was no proof that the arrest was made by him, or that he caused it to be made, or that the officer Hill was bound to make it, or was authorized to do so; that there was no proof of want of probable cause for the arrest, or the acts of the officer, or of Chadsey; that there was no proof of malice, nor of damages; and that if the defendant could be considered as acting at all in the matter, it must be as in aid of the officer, and that the acts of the officer were not binding on Chadsey; nor was he answerable for them, even though Chadsey stated to him that which was sworn to; and that nothing that was said or done by Chadsey empowered or authorized Hill to arrest him, and he had no right to do so therefor; and that no damages were proved to have been sustained by the plaintiff. The justice denied the motion, and the defendant's counsel excepted. The counsel for the defendant then called the defendant as a witness in his own behalf, and offered to prove by him the circumstances

under which the plaintiff obtained the money from the Farmer's Bank of Wickham. The court excluded the testimony. The counsel for the defendant stated that he had also other witnesses in court to prove the facts to be elicited by this course of inquiry. But the court ruled that it could not be admitted, from any source. To which the counsel also excepted.

The testimony on both sides being closed, the counsel for the defendant renewed his motion for a nonsuit, or for judgment for the defendant, of dismissal of the complaint, on the grounds aforesaid ; and that it was clearly proved that the defendant did not cause the arrest of the plaintiff ; and that there was sufficient probable cause for his arrest, even if he did cause it. Motion denied, and the defendant excepted.

The jury found a verdict in favor of the plaintiff for $2000, and the defendant appealed from the judgment.

*S. Sanxay,* for the appellant.

*G. T. Jenks,* for the respondent.

*By the Court,* EMOTT, J. We are of opinion that the damages in this case are excessive, and that a new trial was improperly refused at the special term, and must now be granted, for that reason. The jury could hardly have regarded the sum found by them as the measure of the injury sustained by the plaintiff. Their verdict went farther than to give compensation for his wrongs, and was no doubt intended to inflict punishment upon the defendant for his conduct. They had a right, in such a case, to give damages for such a purpose, but not to an arbitrary amount. Two thousand dollars was an unreasonable verdict, even upon the facts which appeared at the trial. We might indeed feel some reluctance to interfere on account of the damages, were it not for the additional consideration that evidence was withheld from the jury, which would have been proper to explain the

motives of the defendant, and probably would have mitigated the verdict against him.

Before coming to this point, however, it will be necessary to consider briefly the general character of the plaintiff's action, and the rules by which it should be tried. We are by no means convinced that any of the exceptions taken at the trial are well taken, except perhaps the exception to the refusal of the evidence which we have already mentioned; and this evidence was offered in a manner to make its reception very doubtful, and which was exceedingly likely to mislead the judge. The case was tried in a confused way, which no doubt did mislead both the court and the jury, and probably has resulted in doing injustice which may be remedied upon a new trial.

The complaint charges the defendant with having falsely and maliciously without any just cause or provocation arrested or caused to be arrested the plaintiff; and proceeds to allege the circumstances of the arrest and detention and the special or particular damage thereby. An action will lie against one who has either unlawfully arrested or imprisoned another, or who has falsely, that is unjustly and maliciously, prosecuted him and caused his arrest. But these are different actions, requiring different pleadings and evidence, and governed by different rules. Under our former nomenclature, the action for unlawfully arresting or imprisoning another was trespass; while for maliciously prosecuting another, or causing or procuring his arrest, it was an action on the case. The former was the action for false imprisonment; the latter for a malicious prosecution or malicious arrest. In the latter two cases the action was substantially the same, and was governed by the same rules, whether the injury complained of was a prosecution or an arrest. The arrest might be the only act of prosecution, and the only act procured by the defendant. Or, there might be an unlawful and malicious arrest in the course of a lawful prosecution; as where a creditor arrests his debtor for a demand upon which he cannot be im-

prisoned, or for more than is due, or where he is exempt from imprisonment.

But whether the injury complained of was a prosecution, that is, the institution and pursuit of a civil or criminal proceeding, or merely an arrest and detention, the action was the same, being brought upon the case, and varying in the pleadings and proof with the special circumstances. In all such cases, however, whether the injury is a prosecution or an arrest merely, the rules applied by the courts are uniform and settled. The plaintiff must invariably aver and prove both malice and a want of probable cause. (*Mitchell* v. *Jenkins*, 5 *B. & Adol.* 588. *Whalley* v. *Pepper*, 7 *Carr. & Payne*, 506. *Walker* v. *Cruikshank*, 2 *Hill*, 297. 1 *Arch. N. P.* 446.) And it is a part of the want of probable cause, and an indispensable matter both of averment and proof, that the prosecution or arrest should be shown to have been terminated. The cases in which this rule has been sedulously applied to actions for malicious prosecution, as by indictment, are very familiar. The same rule obtains in actions for malicious arrests, although of course the same formalities are not required to terminate an arrest, as to put an end to a prosecution. But that the principle is the same see Buller, J. in *Morgan* v. *Hughes*, (2 *T. R.* 231;) *Wilkinson* v. *Howell*, (1 *Moody & Malkin*, 495.) In the latter case the rule was distinctly stated, in an action for an arrest, by Lord Tenterden, and approved by all the judges of the king's bench.

The action for falsely and unlawfully imprisoning another proceeds upon a totally different principle. That is an action of trespass for a direct wrong, in which the defendant must have personally participated. This is one distinction from the action on the case for maliciously procuring an arrest or instituting a prosecution. Another is that the action of trespass for false imprisonment is for having done what upon the statement of it is manifestly illegal; while the ground of the action for a malicious arrest or prosecution is the procuring to be done what upon the face is or may be a legal act,

from malicious motives and without probable cause. This distinction is clearly stated in the reasons for the judgment in *Johnson* v. *Sutton*, in the exchequer chamber, as given by Lord Loughborough and Lord Mansfield and reported in 7 *T. R.* 544. The farther distinction resting upon the indirect procurement or the direct participation of the defendant in the act, is well illustrated in a case which is very pertinent to the circumstances of the case at bar. The case is *Hopkins* v. *Crowe*, (7 *C. & P.* 373,) an action for false imprisonment, tried before Lord Denman, and in which his rulings were afterwards sanctioned, on argument, by the court of king's bench. The plaintiff was arrested by an officer, in the presence and at the complaint and instigation of the defendant, who was a private person, for ill using a horse. The rule given to the jury was that if the defendant directed the officer to take the plaintiff into custody, he was liable to an action for false imprisonment, but if he merely made his statement, leaving it to the officer to act or not as he thought proper, he was not liable to an action of trespass for the arrest.

It is obvious that these two classes of wrongs and remedies require different rules both of pleading and evidence, and are essentially distinct. In an action for false imprisonment, the gist of the action is an unlawful detention. Malice in the defendant will be inferred, so far at least as to sustain the action, and the only bearing of evidence to show or disprove actual malice is upon the question of damages. So, also, probable cause, or reasonable grounds of suspicion against the party arrested, afford no justification of an arrest or imprisonment which is without authority of law. There are some cases in which the existence of reasonable ground of suspicion is spoken of as a defense in actions for false imprisonment; but upon examination it will be found that these cases turn upon the authority given to magistrates in particular instances to arrest upon suspicion merely, to prevent or punish crimes, and in which therefore a reasonable suspicion is a sufficient authority and justification for an arrest; or else they are cases

in which the actual commission of a felony was first proved, and the case turned upon the ground for suspecting the person arrested. (*See West* v. *Baxendale, 9 Com. Bench Rep.* 141.) In the case of an arrest by a private person, there can be no justification and no defense to the action, unless it first be shown that a felony has been actually committed by some one, and that there were reasonable grounds to believe that the person arrested was the guilty individual. (*See Samuel* v. *Payne, Doug.* 358 ; *Holley* v. *Mix,* 3 *Wend.* 350.) Under our present system of practice such a justification must be pleaded specially; and the answer must begin by showing the actual commission of an offense, and then the cause to suspect the plaintiff of its commission. If as much as this is not pleaded, or if the evidence comes short of this, it can only go to the question of damages.

In an action for a malicious prosecution, on the other hand, it is not necessary that the prosecution or the arrest should have been unlawful or unjustifiable upon its face, but it must have been malicious, and without probable cause. Malice and want of probable cause are the gist of the action, and must be both stated and made out.

The complaint in this action was vicious as a pleading, because it stated two causes of action belonging to these two distinct classes, in one count, coupled by a disjunctive. If this fault in the complaint had been corrected before the issue was joined, much of the confusion which has ensued would have been prevented. The complaint, upon examination, will be seen to be radically defective as a complaint for a malicious arrest or prosecution, inasmuch as it does not aver that the arrest or prosecution is at an end; nor how it was concluded. The action must therefore be treated as for false imprisonment, and does not involve any question of probable cause, unless it be brought in by the answer.

But the allegations of the answer do not make that issue material to the right of the plaintiff to recover. The answer does not allege the commission of a felony by any one, and

therefore there is no justification pleaded. The only issue tendered is the general denial, which goes merely to the fact of an arrest and imprisonment, and the defendant's participation in it. All the remaining statements of the answer are statements of evidence, receivable only in mitigation of damages, and would probably have been stricken out upon motion.

It may be said that the defendant is liable for causing an unlawful detention of the plaintiff, although he did not personally take part in it. If this were so, and were material to the present action, it could not affect the rules by which the case should be tried; since no appearance of probable cause would justify a wholly unlawful detention of the plaintiff, such as this is alleged to have been. And if the defendant took any part in an unlawful imprisonment of the plaintiff, he became a principal in the act, and is liable for the trespass upon the plaintiff's person. While if he merely communicated facts or circumstances of suspicion to the officers, leaving them to act on their own judgment and responsibility, he is not liable at all, in this action, in any aspect of it.

The latter version is that given by the defendant himself, and if it be true he should have had a verdict; while if he went beyond this and directed and participated in the plaintiff's arrest, being present himself at the time, he is clearly liable here for false imprisonment.

The counsel for the defendant excepted to portions of the charge, stating as his objection that the judge left it to the jury to say whether the defendant had probable cause for the arrest of the plaintiff. The objections were founded, as the whole defense seemed to have been conducted, upon the idea that the question of probable cause was material, and that the judge should have decided it himself. Undoubtedly if it were material to determine whether the defendant had probable cause for arresting the plaintiff, that would be a question of law, upon undisputed facts. But it was not material in the present case, and the exceptions are not available. They were not distinct enough to bring the real point in the case

Brown *v.* Chadsey.

to the notice of the judge at the trial ; nor do they bring it before us.

As these pleadings stand, the only questions in the case are the fact of the arrest and detention of the plaintiff, the defendant's participation in it, and the damages. There is no justification pleaded, and no grounds of suspicion can do more than remove or weaken the imputation of malice, and mitigate the damages.

But we think, as has already been intimated, that the judge at the trial should have received evidence to show grounds for suspecting the plaintiff of the commission of a crime, although its actual commission was not averred, nor very clearly offered to be proved.

The evidence was apparently offered as a justification, and was properly rejected for that purpose. But the facts offered, or some of them, if proved, would go to relieve the defendant from the imputation of having acted from merely malicious, or mischievous and wicked motives, which imputation must have led to the present verdict. Evidence of the plaintiff's conduct, and the circumstances of suspicion against him, was proper upon the question of damages only ; but upon that point it was material; and the absence of any explanation or excuse has probably enhanced the verdict, and led to injustice.

Upon the whole we are all of opinion that this judgment should be reversed and a new trial ordered, the costs to abide the event.

[KINGS GENERAL TERM, February 9, 1863. *Emott, Lott* and *Brown,* Justices.]