## COX v. NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

*Abatement — of action for tort, by death of party after recovery and setting aside of judgment. Damages — excessive, for ejection from railroad train.*

P. took a seat in a drawing-room car on defendant's railroad, and refused to pay ⸀xtra fare, on the ground that the ordinary cars were full. The conductor thereupon ejected him from the train. Subsequently P. obtained a judgment against defendant for the ejection, which was set aside and a new trial ordered. Pending the new trial, defendant's attorney applied to have the case put over the term, and as a condition therefor stipulated that, in case of the death of P. before final judgment, the action should not abate. *Held,* (1) that the cause of action, unless for the stipulation, would not have survived the death of P.; and (2) that the stipulation was one not within the authority of the attorney, as such, to make, and did not bind defendant.

There was no evidence of malice in the ejection of P., and he was only delayed two hours. *Held,* that a verdict for $4,000 damages was so excessive as to show prejudice, passion, or an incorrect appreciation of the law applicable to the case.

APPEAL by defendant from a judgment, in favor of plaintiff, for $4,000 damages, besides costs, entered upon the verdict of a jury, and from an order denying a motion for a new trial upon the minutes.

The action was brought by Henry Peck against the defendant to recover damages for the wrongful ejection of plaintiff from defendant's cars. Pending such action said Peck died, and Norman Cox, the executor under his last will, was substituted as plaintiff. The facts were these: Said Peck, having purchased tickets upon the defendant's road, entered a drawing-room car and took a seat there; upon being applied to for extra pay for seats in that car he declined to pay or give up the seats, for the reason that there were no vacant seats in the ordinary cars. Thereupon the conductor forcibly removed him from the train at Palatine Bridge, returning his passenger tickets. The testator brought this action against the defendant for the wrong and injury done him, and upon the first trial recovered a verdict of $8,000.

The damages claimed in the complaint being only $5,000, the excess was remitted and judgment entered for $5,000 damages. On appeal to the general term, such judgment was set aside and a new

trial granted, because the damages were excessive. On a subsequent application of the defendant to put the cause over a circuit, at which it was noticed by the plaintiff for trial, the counsel for the defendant, as a condition for the cause going over, stipulated, that in case of the death of the then plaintiff before final judgment, the cause of action should survive and not abate by his death. Before the case came on for trial the then plaintiff died, and the present plaintiff was substituted.

. Upon the last trial a recovery was had for $4,000, and a motion for a new trial upon the minutes was denied. From such order, and from judgment entered upon the verdict, this appeal is taken. Other facts appear in the opinion.

*Isaac S. Newton,* for appellant.

*Robert A. Stanton,* for respondent, as to the abatement of the action and the effect of the stipulation, cited *Cairnes* v. *Bleecker,* 12 Johns. 300; *Hope* v. *Lawrence,* 50 Barb. 258; *Hoyt* v. *Thompson's Ex'r,* 19 N. Y. 208; *People* v. *Stephens,* 52 id. 306; *Townsend* v. *Masterson, etc., Stone Dressing Co.,* 15 id. 587; *People* v. *Mayor of N. Y.,* 11 Abb. 66; *Hamilton* v. *Wright,* 37 N. Y. 502; *Brown* v. *Nichols,* 42 id. 26 ; *Read* v. *French,* 28 id. 285; *Tiffany* v. *Lord,* 40 How. 481; *Doedt* v. *Wiswall,* 15 id. 128, 145; *Spalding* v. *Congdon,* 18 Wend. 543; *Wood* v. *Phillips,* 11 Abb. (N. S.) 1; *People* v. *Tibbets,* 4 Cow. 384; *Lyons* v. *Third Av. R. R. Co.,* 7 Robt. 605; 1 Wait's Sup. Ct. Prac. 145; *Green* v. *Watkins,* 6 Wheat. 260; *Potter* v. *Van Vranken,* 36 N. Y. 626; *Alpin* v. *Morton,* 21 Ohio St. 536; *Aldrich* v. *Howard,* 8 R. I. 125; *Peebles* v. *N. C. R. R. Co.,* 63 N. C. 238; *Long* v. *Morrison,* 14 Ind. 595; *Hooper* v. *Gorham,* 45 Me. 209; *Nutting* v. *Goodridge,* 46 id. 82; *Demond* v. *City of Boston,* 7 Gray, 544. Exemplary or punitive damages were properly allowed. *Hamilton* v. *Third Av. R. R. Co.,* 53 N. Y. 30; *Caldwell* v. *N. J. Steamboat Co.,* 47 id. 296; *Goddard* v. *Grand Trunk R'y Co.,* 2 Am. Rep. 39; *Atlantic & G. W. R. R. Co.* v. *Dunn,* id. 382; *Taylor* v. *Grand Trunk R'y Co.,* id. 229; *Jeffersonville R. R. Co.* v. *Rogers,* 10 id. 109. The verdict should not be set aside as excessive. *Whipple* v. *Cumberland Manufacturing Co.,* 2 Story, 661; Sedg. on Dam. 601; *Coleman* v. *Southwick,* 9 Johns. 45; 1 Hill. on Torts, 473; *Fry* v. *Bennett,* 9 Abb. 45; *Southwick* v. *Stevens,* 10 Johns. 444; *Collins* v. *A. & S. R. R. Co.,* 12 Barb. 492; *Shaw* v. *B. & W. R. R. Co.,* 8 Gray, 74; *Hegeman* v. *Western R. R. Co.,* 16 Barb. 353; S. C., 13

N. Y. 9; *Clapp* v. *H. R. R. R. Co.*, 19 Barb. 461; *Curtis* v. *R. & S. R. R. Co.*, 20 Barb. 282; S. C., 18 N. Y. 534; *Mentz* v. *Second Av. R. R. Co.*, 2 Robt. 356; S. C., 41 N. Y. 619.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

BOARDMAN, J. Three reasons are urged why this judgment should be reversed and a new trial granted, or judgment ordered for the defendant. First. That the action abated by the death of the testator, Henry Peck, and the cause of the action does not survive. Second. That there is no evidence of malice, as was adjudged upon the former appeal in this court, or other misconduct on the part of the conductor which can justify the charge of the court allowing exemplary damages, and that the charge, in that respect, was erroneous. Third. That the damages are excessive in any point of view, and vastly exceed the law of compensation to which plaintiff or his testator was entitled.

But for the stipulation I am satisfied this cause of action would have died with the plaintiff's testator. The final clause of section 121 of the Code takes the place, in my judgment, of section 4, 2 R. S. 387. The verdict therein referred to is the verdict upon which the case shall thereafter proceed. When such verdict is set aside, it is as though no verdict had ever been rendered in the case. The judges of the Court of Appeals have acted upon this belief in at least two cases — *Comstock* v. *Dodge*, 43 How. 97; and *Spooner* v. *Keeler*, 51 N. Y. 536. Such a recognition by that court should guide us, notwithstanding the suggestion that it was inconsiderate.

Does the stipulation, if authorized, wipe out the law, and make, by virtue of its own intrinsic power, a new law directly hostile to the old? I think not. It is a stipulation that the court may do what the law says it cannot do. It creates a right in the plaintiff outside of, and in hostility to, the law. In many cases rights are given to parties for their benefit, which they may waive. Here an absolute right is attempted to be created by the parties, the law denying its existence. It is an extreme view to suppose that an attorney or counsel may impose such an obligation upon his client. It is not within the ordinary conduct of a cause. Ordinarily, what relates to the remedy only may be controlled by the attorney, if within the fair scope of his authority as an attorney in the progress of litigation. But when he attempts to deprive his

client of an abstract right given by the law, and in no way related to the conduct of the litigation intrusted to him, he acts in excess of any real or implied power intrusted to him. The courts have gone far, in some instances, to justify counsel in the use or waiver of remedial processes used for the protection of rights or the prevention of wrongs. But such conduct has been adjudged in the respective cases to be within the scope of the apparent, if not real, authority conferred by the client. Such a presumption cannot be indulged in this case. The act done was so far from the ordinary conduct of the case, so novel in its character and so extraordinary in its consequences, that an authority should not be presumed from employment but must be established as a fact. It follows that this action cannot be maintained, as for a tort, since the death of Henry Peck.

It is suggested that this action might be sustained, by virtue of the stipulation, as an action for a breach of contract. That may be true. As such an action seeks only compensation for an actual loss sustained, this judgment could not stand. It would be excessive in amount. Besides the charge of the court in that view is erroneous, in the many respects to which exceptions were taken by defendant, and especially in the rule of damages laid down.

Upon the hearing of the former appeal in this case, Mr. Justice DANIELS, delivering the opinion of the court, held, in substance, that there was no evidence in the case that would justify the allowance of exemplary or vindictive damages, and that, as a consequence, the former judgment of $5,000 was entirely beyond what was justified by the circumstances of this case, even if it be one which would justify punitory or exemplary damages. The case has been retried upon the same evidence, in substance and in fact, as to Henry Peck and the jury have now rendered a verdict of $4,000. Is not this verdict condemned by the former decision as excessive? The essence of a wrong justifying exemplary damages is, that it shall be an intentional violation of another's rights, or that a proper act shall be done with an excess of force and violence, or with malicious intent to injure another in his person or property. "It can make no difference whether the action be one nominally *ex contractu* or *ex delicti*. In either case, if no evil motive be imputed, the amount of compensation is as much a matter of law as the right itself, and can with no greater safety be submitted to the vague and fluctuating discretion of a jury." Sedgwick on

Dam. 472, 522, 528, 545, 617; *Edwards* v. *Beebe*, 48 Barb. 106; *Wallace* v. *Mayor of N. Y.*, 9 Abb. 40.

In this case the plaintiff's testator was notified that he must vacate the seat or pay for it. He refused to do either. It was optional with him to leave a train in which he could not procure a seat without extra pay, or to pay, for such seat. On his refusal to do either, the conductor removed him, with such slight force as was necessary. There is no evidence of an intent to do more than was necessary to accomplish that purpose. There is no evidence of malice or of any preconceived intent to injure the deceased. There is little, if any, personal injury to the deceased. The loss of time was of no moment. What is there, then, in the case that calls for a verdict of $4,000? Little, indeed, besides the mortification and humiliation to which testator was exposed by being put out. There is nothing in the case to show that defendant did not run sufficient trains to accommodate the public at the ordinary fare. In fact the testator was so accommodated within two hours after being put off.

If it be conceded that some exemplary damages might have been justly allowed, yet they should be in proportion to the aggravation. Here we have seen the aggravation, if existing at all, was very slight; yet the defendant is punished to nearly the extent of $4,000, beyond actual compensation for such slight or doubtful aggravation.

We are disposed to concur in the views of Mr. Justice DANIELS,*

---

*The following is the opinion referred to, delivered March, 1873, at the general term of the Third Department:

PECK v. NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

DANIELS, J. The evidence given by the plaintiff showed that he purchased his ticket in Norwich, Chenango county, on the 17th or 16th of August, 1870, for Albany, in the State of New York, by way of Utica, over the railroad of the defendant. That he took the train at Utica, and was carried as far as Palatine Bridge, and there removed by the conductor, and his tickets, which had previously been taken up, were there returned to him. The passenger cars of the train consisted of what are known as drawing-room cars and one ordinary passenger car in their rear. The rear car was filled with passengers to such an extent that it afforded no accommodations for the plaintiff and his wife and daughter, who accompanied him, when they took the train at Utica. The evidence of the plaintiff tended to show, and the jury had a right to find the fact from it, that when he approached the train he went toward the rear car, with the apparent design of taking his passage in that car. That he found the conductor there, and was informed by him that there was no room in that car, and saw himself that such was the fact. The conductor, he said, stated that there were a few seats forward, and motioned the plaintiff and the ladies with him to that part of the train, observing that they would have to go forward. They then went forward and took their seats in one of the drawing-room cars.

and to hold with him that the damages in this case are so excess-
ive as to show prejudice, passion or an incorrect appreciation of
the law applicable to the case.

The evidence given by the conductor was in many essential respects in conflict with that
of the plaintiff. But as the jury found a verdict in his favor, it may be presumed from
that circumstance that they relied upon his evidence as accurately describing and detailing
what had taken place when he took the train at Utica. And that will justify the conclusion
that the conductor saw the plaintiff about to take the rear car of the train, which was a
sufficient indication that he designed being carried in the ordinary manner and for the
ordinary fare, to his destination, by the train.

That car was incapable of affording the plaintiff that accommodation, and that fact was
known also to the conductor. Understanding those circumstances, the conductor informed
the plaintiff there was no room in the rear car, and that there were seats in one of the for-
ward cars, and both motioned him and directed him forward to such seats. Nothing,
according to the plaintiff's evidence, was said by the conductor, indicating that extra fare
would be expected from him if he took his passage in the car he was so directed to take.
And although he had heard that persons riding in those cars were charged additional fare
for the special conveniences supplied by them, he was not given to understand that such
would be the case with him when he took a car of that description, because the other car
was full, and by the express direction of the conductor, after he had indicated it to be his
own purpose to ride upon the other car.

Under these circumstances it was for the jury to say whether it could be reasonably
understood, when he took the other car, that he was to be carried in it for the same fare as
entitled him to ride in the rear car, and whether he did understand that to be the design of
the conductor, from what had transpired between them. If he did, that would in sub-
stance create an obligation on the part of the defendant to carry him in that manner.
For, although the conductor would not be authorized to agree to carry passengers without
compensation, he might bind the defendant by his agreement made to provide for an unex-
pected emergency in the carriage of a passenger who had paid all that, under ordinary
circumstances, was required for his passage. Such a case was presented in this instance.
And if the plaintiff in good faith believed, from what was said and done, and the condition
of the train, and was justified in so believing, by the facts existing, that the conductor
intended he should be carried in one of the forward cars for the same fare he had paid for
his carriage by the rear one, then it was the defendant's duty to perform that understand-
ing, until room could be provided for him in the rear car, after the plaintiff had acted upon
it by taking his seat, and the train had proceeded on its way.

Such an understanding would combine the attributes of a contract which it was the
defendant's duty to fulfill. It may be that a very liberal view of what had taken place
was required for the purpose of establishing such an obligation. But still it can hardly be
pronounced to be unwarranted. It was, as the evidence presented it, a question for the
determination of the jury, and their conclusion was in favor of the plaintiff.

After the plaintiff had proceeded about twenty-five miles, and while the condition of the
rear car remained the same upon the train, he was required to pay for the privilege of
being carried in the car to which the conductor had directed him, for want of room in the
rear car. This demand was made by the conductor of the drawing-room car. It does not
appear what his authority was in that respect, but it may be presumed that it was so far
subordinate to that of the conductor of the train, as to render him incapable of annulling
the lawful engagements of the latter. He therefore could have no more right to require
the payment of additional fare, than the conductor of the train. And if that had been
surrendered by him, the other conductor could not, under the evidence now in the case,
revive the demand. When it was once relinquished, the right was gone for the entire trip,
provided the rear car continued so full as to exclude the plaintiff from it. That good faith
which passengers have a right to expect from the agents of the defendant, require that the
conduct, direction and understanding which the jury, by finding for the plaintiff, must have
been convinced induced him to take the car he was carried in, should be fairly and reasonably
performed. And that could not be done by repudiating the obligations resulting from what

For the reasons first herein given, the judgment and order appealed from must be reversed. But since the cause of action did not survive the death of Henry Peck, the trial thereafter was a nullity and no new trial should be ordered.

possibly may have been the inconsiderate conduct of the conductor of the train. For that reason the defendant's agents had no right to remove him from the train, because he refused to pay the additional fare the jury found he had reason to believe was not to be demanded in case he took his passage in the car indicated by the conductor, instead of the one he designed to enter, and in which it would have been the defendant's duty to carry him without farther compensation beyond that paid for his ticket.

Passengers are not to be misled into obligations of this nature. They are entitled to be fairly treated, and to have the reasonable undertakings of the carrier's agents substantially performed.

The plaintiff was removed from the train for his refusal either to pay the additional fare, or to return to the rear car, in which neither himself nor the ladies who were with him could be conveniently or comfortably carried. This was a violation of the rights he had acquired, which, under the circumstances, the jury appear to have been satisfied were established by the evidence in the case ; and for this invasion of his rights he was entitled to compensation in this action.

The plaintiff testified that he was removed by the conductor taking him by the coat collar, jerking him off his seat, and taking him off the cars. He said that "they followed him on to the platform, and down the steps." "The other conductor pushed me from behind, with both hands. When on the ground I turned round to look after my wife and daughter. This brought conductor Cole behind me, and he took hold of me and jerked me away, and partly down, and my hat off. This hurt me a good deal. I had been under medical treatment a good while. I was in feeble health." "The jerk made me sore; made my flesh very sore ; hurt my hand that had hold of the rail. The flesh was sore some time, and my finger swelled and became sore and swollen, so we came home It is crooked yet. It is the finger next the little one. The jerk strained me, and made me lame all over my body. I felt the effects of the strain two or three weeks. It wore away by degrees. I was confined to my bed over two weeks with my finger. That was the principal cause. It never has got well. It troubles me now."

This was the plaintiff's description of the manner in which he was removed from the train, and the effect it had upon his person and his health.

If the conductor was rude, harsh, wanton, or uncivil, in removing the plaintiff from the train, as he was acting within the scope of his employment in the defendant's service, the defendant became liable to the plaintiff for the consequences. The act performed was in the line of his employment, and, in a proper case, could have been lawfully performed by limiting the force applied to such as the circumstances rendered reasonably necessary. But this was not a case of that description. Hence the use of any, even the slightest force, was an invasion of the plaintiff's right as a passenger; and for that he was entitled to be reasonably compensated.

There is nothing in the case tending to show that the conductor had any reason for supposing that the plaintiff had turned to look after his wife and daughter, when he took hold of the car rail and was jerked away by him. And, in the absence of such evidence, it may very well have been that the conductor supposed, from the plaintiff's act, that he was about to re-enter the car. If that was the case, then there was nothing whatever in the conduct of the conductor tending to show him to have been actuated by malice. He was, according to the plaintiff's evidence, rough and uncivil. But it is certainly doubtful, to say the least, whether any evidence was given from which it can properly be inferred that he was wanton, cruel, or malicious.

And without such evidence, the jury could go no farther by their verdict than to compensate the plaintiff for the injury he had sustained, and the inconvenience he was subjected to, by being compelled to wait for the next train. This inconvenience was not very serious, for the next train followed the one the plaintiff was removed from, between one and two hours

Following the precedents in *Comstock* v. *Dodge*, 43 How. 97 and *Spooner* v. *Keeler*, 51 N. Y. 536, no costs are allowed.

JAMES, J. This was an action commenced by Henry Peck to recover damages for his forcible removal from one of the cars running on defendant's road. Since the first trial of the cause Peck has died, and his executor has been substituted as plaintiff in his stead.

It appeared that the deceased bought three tickets, for himself, wife and daughter, from a lateral road, entitling the holders to a passage on defendant's road from Utica to Albany. At Utica these persons went on board of a train standing on the track and took their seats in a palace car. After the train started they were called upon for their passage tickets, which were presented, accepted and

afterward, and by that the plaintiff was carried upon the same ticket, and reached Troy in time for tea.

In order to justify the jury in going beyond a mere compensation of the plaintiff, by their verdict, the evidence should show the conduct of the persons who removed him from the train, to have been wanton, vindictive, malicious, oppressive, or cruel. That is a fact to be proved either by direct or indirect evidence. If it is not established, then the verdict should be limited to what would be fair and reasonable compensation for the actual injury sustained. The amount of that cannot be arbitrarily fixed, in cases like the present one, but it must be left to the discretion, judgment, and good sense of a jury. And where the amount is fairly fixed in that manner, the verdict cannot properly be interfered with by the court. Where intentional misconduct, or gross incivility, or rudeness, is shown, then the jury may, and often should, as a proper safeguard for the public, and by way of punishing positive or intentional misconduct, go beyond mere compensation by their verdict, and give the plaintiff such an amount as will have the effect of checking and restraining similar violations of private rights on the part of others, and provide an adequate degree of punishment for the acts forming the subject of complaint. But, in the exercise of this authority, the jury are to be limited to the reasonable result of intelligence, judgment and experience. If they go so far beyond it as to warrant the conclusion that prejudice, partiality, excitement, or bias, controlled their action, then it is the duty of the court to interfere, and set aside the verdict, and send the case before another jury. *Brown* v. *Chadsey*, 39 Barb. 253; *Murray* v. *Hudson River Railroad Co.*, 47 id. 196.

The verdict in this case, as rendered, was $8,000, an amount which no person can contemplate or consider, in view of the conduct of the conductor and its effects upon the plaintiff, without at once condemning it as excessive. It was entirely out of proportion to the subject-matter of the complaint, and it was so regarded by the justice before whom the trial was had, who states in his opinion that he should feel obliged to set it aside if it had not been reduced, as it was, to the sum of $5,000, the amount demanded by the plaintiff in his complaint. But that sum was entirely beyond what was justified by the circumstances of this case, even if it be one which would justify punitory or exemplary damages; for where they are awarded, they must not be unreasonably apportioned to the conduct justifying their imposition.

In the present instance, it is apparent that the verdict, as it was reduced by the plaintiff at the trial, greatly exceeds what the plaintiff could reasonably expect or demand; and for that reason the judgment, and the order denying a new trial, should be reversed, and a new trial should be directed upon payment by the defendant of costs of the trial already had.

MILLER, P. J., and DANFORTH, J., concurred.

taken up by the train conductor ; a few minutes after the drawing-room car conductor called upon them to pay for the seats occupied in said car. This the deceased refused. He was informed of the rules of the cars, and the conductor's duty to collect pay, or require a removal from the car ; that unless said rules were complied with the conductor would be compelled to cause their removal therefrom. The train was a special train running in competition with a Pennsylvania road, without reference to lateral roads in this State, and was made up of all drawing-room cars, except one common car in the rear ; the seats in that car were all occupied, and Peck refused to remove, or pay for the seats in the drawing-room car. On arriving at Palatine Bridge, a regular stopping place, about forty miles distant from Utica, the deceased was removed from the car with no more force than necessary to overcome the resistance offered, his wife and daughter following of their own volition, and the passage tickets handed back. Within a short time thereafter a regular train on the defendant's road came along, the deceased, his wife and daughter, got on board and were carried to their destination, on said tickets.

In its charge, the court told the jury " if they believed that the conductor in the performance of his duty acted maliciously, recklessly or violently, or was guilty of misconduct, they had a right to add what is termed exemplary damages," etc. The jury found a verdict for $4,000.

The action had once before been tried and plaintiff had a verdict, and a new trial had been granted. Before the first trial, the cause being on the calendar for trial at a regular circuit, the defendant sought to have the trial go over the term on account of the absence of a material witness, and on defendant's stipulating that, in case of the death of the plaintiff before final judgment, the cause of action alleged should survive, etc., the cause was allowed and did go over the circuit. Before the last trial the plaintiff died ; the present plaintiff was substituted, and the present verdict obtained.

So long as the defendant furnished a sufficient number of trains, with a sufficient number of proper cars, to accommodate the traveling public on the line and route of its road, it had the right to run extra, or special trains, with palace or drawing-room cars, charging for seats or rooms therein, and to exclude from such cars all persons refusing to pay extra for seats therein. But every such train should in some way be so marked, designated, or guarded, as

that no passenger could get upon it without notice of its special character. In this case it was not so guarded. The deceased and his family were permitted to enter without notice, and under such circumstances the defendant was bound to furnish them seats in a common car, or allow them to remain in the palace car, free of the charge for seats, to their destination. Therefore, while the conductor was simply discharging his duty in their removal, and not liable in damages for its performance in a proper manner, the company itself was liable in damages, not for the acts of the conductor, but for not furnishing seats in a common car according to the provisions of its contract as implied in the purchased tickets.

It was the duty of the deceased, on being informed of the situation, either to pay the extra charge, or leave the car and look to the corporation for redress ; but refusing to do so, he placed the conductor in a position where he had to disobey his orders or remove the deceased from the car. If, in the discharge of that duty, the conductor used no more force than was necessary to overcome the resistance offered, no action could be sustained against him, and consequently none against his principal for that act. See *Townsend* v. *N. Y. C. & H. R. R. R. Co.*, 56 N. Y. 295 ; *Cleghorn* v. *N. Y. C. & H. R. R. R. Co.*, id. 44.

The gravaman of this action, as I have shown, was the forcible ejection of the deceased from the car by the conductor, not for refusing to carry him in another car provided for passengers with similar tickets, or for a refusal to carry him in the drawing-room car, as that was offered if he would pay for seats extra. The court assumed on the trial that in putting the deceased off the conductor was in the performance of his duty.

It said, "if the jury believe that the conductor, in the performance of his duty, acted maliciously, recklessly or violently, or was guilty of misconduct, they had the right to add exemplary damages." . As an abstract proposition, this part of the charge may be unobjectionable, but was not applicable to the case, and was improper, as implying there was evidence from which the jury might find malice, recklessness, violence and misconduct, when in fact there was no such evidence ; it was clear that there was no more force used than actually necessary to overcome the resistance offered ; and then not resorted to until after repeated notice and long forbearance, after traveling a distance of over forty miles. The amount of the verdict shows that this feature of the charge was

seized upon by the jury to punish the defendant for an act of its servant in performing his duty; for doing what he had the right to do. But if it were conceded that the conductor had been guilty of an excess of force, of malice, recklessness, etc., in the discharge of his duty, and that it was a case proper for exemplary damages, the verdict was not at all proportional to the offense or the injury inflicted, as appears from the case, and demonstrates that the jury must have been influenced by prejudice, passion, or something outside the case itself.

The next question is, did the action abate by the death of the plaintiff? No question is made that by the common law such would be the result of Peck's death. But it is claimed that this rule of the common law has been changed by the Code; if not, that such result in this case had been saved by stipulation.

The Code (§ 121) provides that "after a verdict shall be rendered in any action for a wrong, such action shall not abate by the death of any party, but the cause shall proceed thereafter in the same manner as in cases where the cause of action now survives by law." This subdivision of said section received a very careful consideration in *Wood* v. *Phillips*, 11 Abb. (N. S.) 1, although the precise question now presented was not passed upon. But it may be said in this case as was said in that, there is nothing in the language of section 10 inconsistent with holding that, after a verdict has once been obtained in an action of tort, the action does not abate, although the verdict be set aside, a new trial granted and the plaintiff afterward die. Such would seem to be an equitable construction and application in cases where the verdict was set aside for excess of damages, as in this case. The Code is much broader in its provisions than the Revised Statutes, and, liberally construed, would reach this case, and place such causes of action, after verdict once obtained, as to its liability to abate on the death of a party, on the same basis as a chose in action, and a construction not inconsistent with the progressive tendency of the age seeking more exact justice. These views would seem at first blush inconsistent with the cases of *Comstock* v. *Dodge*, 43 How. 97, and *Spooner* v. *Keeler*, 51 N. Y. 536, but in neither case was the effect of the Code upon the question even alluded to.

The stipulation in the case was: that in case of Peck's death "before final judgment and determination, that the alleged cause of action shall survive," etc. It is claimed that defendant is not

bound by this stipulation, because the counsel had not authority, as such, to bind his client. It has been repeatedly held that the court, on application to put a cause over the circuit, has power to impose as a condition, that the party shall stipulate that the cause shall not abate in case of plaintiff's death. *Ames* v. *Webbers*, 10 Wend. 576. It appears that in this case the stipulation was given as a condition of allowing the cause then to go over the term, and whether imposed by the court or given by the attorney, knowing the power of the court to impose it, makes no difference ; having. accepted it, and availed itself of its benefit, the defendant is estopped from denying the power of its agent to make it.

For the reasons first above stated, the judgment should be set aside, a new trial granted, costs to abide the event.

LEARNED, P. J., concurs with BOARDMAN, J.

*Judgment reversed.*