# New York Marine Court.

*General Term—March,* 1879.

## CHARLES HARFT, PLAINTIFF AND RESPONDENT, *against* CHARLES McDONALD, DEFENDANT AND APPELLANT.

A prostitute, who, while sitting at the window of her room, solicits men from the street for immoral purposes, is a disorderly person within the meaning of that term as used in the statute, and may, if the offense be committed in the presence of a police officer, be arrested by him, without a warrant from a magistrate.

And if the prisoner, after being arrested, escapes, the officer may, if the pursuit be fresh, and he be resisted, break open the outer door of her house and recapture her, and is not liable for so doing.

The plaintiff, who is the lessee of premises known as numbers 116 and 118 Greene street, in the city of New York, brought this action against the defendant, for illegally, maliciously and with force breaking into and entering upon said premises, to the plaintiff's alleged damage, $2,000. The defendant, by way of justification, pleads that what he did was lawfully done in virtue of his office as one of the captains of the municipal police, in recapturing an escaped prisoner, and that the damage, which was trifling, was done in the necessary and proper discharge of his duty. The justice who presided at the trial, in effect, charged the jury that the arrest by the captain was illegal, and that the plaintiff was entitled to recover whatever damages were done to his premises. The jury, acting upon this instruction, found for the plaintiff, and the defendant, feeling aggrieved, appeals.

*Charles F. MacLean,* counsel for appellant.

*Henry Wehle,* counsel for respondent.

McAdam, J.—The evidence upon the part of the defendant proved that the dwelling where the alleged trespass was committed was one of a number of disreputable houses, inhabited by lascivious women, who gave obscene exhibitions, and solicited men from the street for immoral purposes, to the great annoyance of respectable people residing in, or having occasion to pass through the neighborhood. That on January 14, 1876, while the defendant was passing said premises, he was solicited to enter by one of the female occupants who was sitting at the window, that he started up the stoop, and the woman came down and opened the front door and let him in. When the door was opened, the defendant (who was in citizen's dress) said, "I arrest you; I am an officer." He thereupon took hold of his prisoner, or, to use his own language, "hung on to her." A second party then came to the assistance of the female, and by the efforts of the two, she was released from the officer's hold, the officer shoved out, and the outer door closed. The defendant immediately procured assistance, broke open the outer door, and recaptured his prisoner, and took her to the police court, where she was adjudged guilty, and fined by the magistrate. If these facts are true, the defendant was in law justified in doing what he did, and his act, being lawful, gave the plaintiff no right of action. The female arrested was a common prostitute, and having been discovered by the defendant in the act of soliciting men from the street for immoral purposes, was a disorderly person within the meaning of the statute (2 _R. S._ 6 ed. p. 893, § 1; p. 896, § 22), and was liable to arrest by the defendant, in whose presence the act was committed, without a magistrate's warrant.

The fiction that a person's house is his castle, and that while in it the law throws around him its ægis of protection, has never been extended to shelter overt

Harft v. McDonald.

acts of licentiousness committed at the windows over-looking the street, and exposing the act to the public view. I can discover no difference, so far as public morals are concerned, between this case and one where men are solicited by a prostitute for immoral purposes upon the public highway. The solicitation in either case is from the street, and the law intended to protect the public while upon the highways of the city from these indecent exhibitions. The one case may be more susceptible of proof than the other, but, when proved, as in this instance, there is no distinction to be drawn between the gravity of the offense. It is an indictable offense at common law to publish an obscene book or print, or to publicly utter obscene language ; and so of any offense tending · to corrupt the morals of the people. It is not even necessary in such a case to aver the offense to be a common nuisance, the indictment being for an action of evil example. And any public show or exhibition which outrages decency, shocks humanity, or is *contra bonos mores*, is punishable at common law ( *Wharton's Am. Crim. Law*, § 2547).

The police, in the nature of things, must have some sort of surveillance over houses inhabited by lewd and disreputable characters, and must see that they do not ply their vocation in the public gaze ; and where, as in this case, an officer, in the honest performance of his duties, makes an arrest which he justifies by legal proofs, he should be sustained rather than condemned.

The statute authorizes the several members of the police force to immediately arrest, without warrant, any person who shall commit, or threaten to commit, in the presence of such member, or within his view, any breach of the peace or offense prohibited by act of the legislature, or by any ordinance of the city, town or village within which the offense is committed ( *Laws of* 1864, p. 921, § 30 ; *Laws of* 1867, p. 2002, § 14). The statute before cited (2 *R. S.* 6 ed. p. 893, § 1 ; 896,

§ ' 22), contains the legislative prohibition, and creates the offense of which the person arrested was convicted, and the legislative enactments before referred to authorized the arrest by any policeman *virtute officii*, without a magistrate's warrant.

The arrest by the defendant was complete, when the accused was within his power (Gold *v.* Bissell, 1 *Wend.* 210). It was legal under the statutes cited, and the prisoner having broken away, the officer was justified in breaking open the outer door of the house she occupied, for the purpose of retaking her, the pursuit being fresh, and the party consequently aware of the object of the officer (Allen *v.* Martin, 10 *Wend.* 300 ; *Fost.* 320 ; 1 *Salk.* 79 ; 1 *Russ. on Cr.* 522, 631 ; *Barb. Crim. Law*, 548).

Instead of submitting it to the jury to determine whether or not the defendant's evidence was true, with the instruction that if the jury believed it, they should find for the defendant, the justice directed the jury that the defendant's acts were illegal, and that the plaintiff, notwithstanding the truth of the defendant's evidence, was entitled to recover damages. This was clearly erroneous, and for this error, and without considering the other objections raised in the case, the judgment will be reversed, and a new trial ordered, with costs to abide the event.

ALKER, Ch. J., concurred.

Prior to the statute of 1864 (*L.* 1864, p. 921, § 30; *L.* 1866, c. 377), a police officer could not arrest for a violation of a corporation ordinance, without a magistrate's warrant (Schneider *v.* McLane, 36 *Barb.* 495; and see 13 *Hun*, 173; 5 *Lans.* 84; 20 *English R. Moak's Notes*, 561).