AKIN and SCHUYLER *vs.* THE WESTERN RAIL ROAD CORPORATION.

By the act of the legislature, passed in 1840, (*Laws of* 1840, *p.* 80,) granting authority to the Albany and West Stockbridge Rail Road Company to construct one or more *depots* in the city of Albany, and to connect the same with its rail road by a single or double track; and thus, in effect, empowering the company to extend its road from Greenbush to Albany, the rail

road company has the right to carry passengers from Albany to Greenbush, as well as over any other portion of its road.

There is nothing in that act, or in the agreement subsequently made between the corporation of Albany of the first part, the Albany and West Stockbridge Rail Road Company of the second part, and the Western Rail Road Corporation of the third part, bearing date April 23, 1840, which prohibits the Western Rail Road Corporation from carrying passengers from Albany to Greenbush, any more than from Albany to any other station on the line of the road.

The carrying of passengers across the river, between Albany and Greenbush, by the Western Rail Road Corporation, upon ferry boats, free of charge, is not a violation of the rights conferred upon B. Akin and S. Schuyler, by a grant to them from the corporation of Albany, made on the 1st of October, 1852, of the exclusive right of ferriage between Albany and Greenbush, for the term of twelve years.

THIS was a case submitted to the court without action, pursuant to the 372d section of the code. The facts agreed upon by the parties are as follows : By an act of the legislature, passed in 1836, (*Sess. Laws of* 1836, *p.* 361,) the Castleton and West Stockbridge Rail Road Company was authorized to make the western termination of its road at a point opposite to the city of Albany, in the town of Greenbush, and the name of the corporation was changed to the Albany and West Stockbridge Rail Road Company. By another act, passed in 1840, (*Sess. Laws of* 1840, *p.* 80,) the company was authorized to construct one or more *depots* in the city of Albany, and to connect the same with its rail road by a single or double track, *with the consent and approbation of the corporation of the city,* but it was declared that the act should not be so construed as to authorize the company to construct a bridge across the Hudson river, or in any manner to obstruct its navigation. By an agreement between the corporation of Albany of the first part, the Albany and West Stockbridge Rail Road Company of the second part, and the defendants of the third part, and bearing date the 23d day of April, 1840, the corporation of Albany gave their consent and approbation for the construction by the defendants, who by virtue of the same agreement, became the lessees of the Albany and West Stock-

bridge Rail Road Company, of one or more *depots* within the city of Albany, and to connect the same with their rail road by a single or double track, &c., upon the terms and conditions prescribed in the act of April 13th, 1840. The agreement also contains a provision in the following words: "And the said party of the first part further agrees that no charge shall be made to the said party of the third part for the right and privilege, at their own expense, to carry across the Hudson river, at Albany, the passengers and freight transported or to be transported upon said rail road, or the officers, agents and servants of said party of the third part, or their engine, cars or other property."

The rail road of the defendants terminates at a point on the eastern shore of the Hudson river in the town of Greenbush, opposite to the original four wards of the city of Albany, and is connected with the city by means of ferry boats running from said termination across said river to the foot of Maiden Lane, a point within the limits of the original four wards of the city and its original bounds as established by the charter of Governor Dongan. The defendants are in the habit and practice of carrying across the river, on their ferry boats, other persons, teams and carriages than such as are specified in the agreement, free of any charge therefor, and which would necessarily cross the river by means of the plaintiffs' ferries, but for such carriage by the defendants; but such persons, teams and carriages are not solicited or excluded by the defendants. The defendants maintain their ferry for rail road purposes exclusively. No ferriage is charged or collected of any body.

On the first day of October, 1852, the corporation of Albany granted to the plaintiffs, for the term of twelve years, at an annual rent of $2250, the exclusive right, license, privilege and franchise of ferrying on each side the Hudson river from the east bounds of the original four wards of Albany to Greenbush, excepting, however, any right of ferriage before granted, or which might thereafter be granted to any rail road company whose road is or may be terminated, or constructed

along the east shore of the Hudson river, opposite said original four wards, which rights should not be extended beyond the passengers, freight, agents and servants carried, or to be carried upon such roads, or in the service of such companies.

. The plaintiffs claimed that the carriage of persons, passengers, teams and carriages, other than such as are mentioned and specified in the agreement aforesaid, is a violation of their rights. They asked that the defendants might be adjudged to account for the loss and damage sustained by the plaintiffs, and that they might be restrained from further violating their rights.

*J. I. Werner,* for the plaintiffs.

*C. B. Cochran,* for the defendants.

*By the Court,* HARRIS, J.  The Dongan charter, after reciting that the inhabitants of Albany had " established and settled *one ferry* from the town of Greenbush, situated on the other side of Hudson's river, for the accommodation and conveniency of passengers, the said citizens and travelers, granted, ratified and confirmed unto the inhabitants, who were thereafter to be called ' The Mayor, Aldermen and Commonalty of the city of Albany,' the aforesaid ferry ;" and also, " full license, power and authority to establish, appoint, order and direct the establishing of all ferries in and throughout the said city, or leading to the same, necessary, needful and convenient for the inhabitants of said city and the parts adjacent, and .for travelers there."  By virtue of this grant, the ferry then existing, and which still exists, at the foot of Ferry street, became vested in the corporation of Albany. The corporation was also authorized to establish other ferries, but I find nothing in the charter which makes this power exclusive.  On the contrary, notwithstanding the provision in the charter, vesting in the corporation the power to establish

ferries, I think it would have been competent for the legislature also to exercise the same power.

But this power was rendered exclusive by the 48th section of the act of April 13, 1826, (*Sess. Laws of* 1826, *p.* 201,) which declares that the right of ferry granted by the charter of the city to the mayor, aldermen and commonalty thereof, shall be so construed as to vest in the said mayor &c. " the *sole and exclusive* right of establishing, licensing and regulating all ferries on each side of the Hudson river, leading from Greenbush opposite the east bounds of the original four wards of the said city, to the city." (*See also Sess. Laws of* .1842, *p.* 361, § 76.) Whatever might before have been the construction of the provisions of the charter relating to ferries, this statute is a mandate from the legislative power, requiring all courts to construe that charter as vesting in the corporation of Albany the sole and exclusive right of establishing, licensing and regulating ferries across the Hudson river opposite the original boundaries of the city. The legislature has not assumed to exercise any such right. All that it has done, is to authorize the rail road company to construct one or more *depots* in the city of Albany, and to connect the same with their rail road by a single or double track, with the consent and approbation of the corporation of the city, which consent and approbation was obtained. The defendants, therefore, have acted as well under the authority of the corporation of Albany as of the legislature.

The act of 1840, in effect, authorized the rail road company to extend its road from Greenbush to Albany. The language of the section conferring this power seems to contemplate that this was to be effected by means of a bridge. The authority granted is to construct one or more *depots* in Albany, and to connect these with their road by a single or double track. Whether this is to be done by a bridge or a tunnel or a ferry is not indeed suggested, yet, were it not for the restriction in the last clause of the section, which declares that it shall not be so construed as to authorize the construc-

tion of a bridge across the river, a bridge might have seemed the most natural and practicable mode of accomplishing the thing authorized to be done.

But whether this object is effected by means of a bridge or a ferry, the defendants have the right to carry passengers from Albany to Greenbush, as well as over any other portion of their road. Their franchise extends from Albany to the Massachusetts line. There is nothing in the act of 1840, or the agreement subsequently made between the parties, which prohibits the defendants from carrying passengers from Albany to Greenbush, any more than from Albany to any other station on the line of the defendants' road. Nor is it a question which concerns the plaintiffs, whether the defendants charge fare for carrying their passengers from Albany to Greenbush, any more than whether they charge fare for carrying passengers upon any other part of their road.

Suppose the clause in the act of 1840 which prohibits the rail road company, in extending their road to Albany, from building a bridge, were to be stricken out, and the defendants were to substitute a bridge for their boats, could it be pretended that they would be liable for an infringement of the rights of the plaintiffs, because they allowed persons or even carriages to pass over it? The plaintiffs are the proprietors of a ferry; their right is *exclusive*. This is conceded. No other person has a right to establish a ferry across the Hudson opposite the original boundaries of the city. A ferry, when considered as a franchise, consists in the right, arising from grant or prescription, to have a boat or boats for carrying men and horses across a river *for reasonable fare or toll.* (*Burrill's Law Dic. Ferry.*) Bouvier defines a ferry to be a place where persons and things are taken across a river or stream in boats or other vessels *for hire.* The franchise consists in the right to exact toll, and this right involves the corresponding obligation of maintaining the ferry and carrying such persons as apply and pay their fare. But suppose a gentleman residing on either side of the river should choose to

Akin *v.* Western Rail Road Corporation.

maintain his own boat, and should, as often as occasion might require, cross the river with his family and friends, could it be pretended that, by so doing, he was violating the exclusive privilege of the plaintiffs? It would be very likely to diminish their tolls a little; but if so, it could but be regarded as *damnum absque injuria.* Suppose again that this same gentleman should find upon his boat, when about to cross, other persons. They were not there by his solicitation, but aware that he had a boat about to cross the river, and themselves desirous of crossing, they had, uninvited, entered upon the boat, awaiting the owner's pleasure, to cross the river; will it be claimed by the plaintiffs that the owner of the boat, before he ventures to cross, himself, must, at the peril of an action, expel the persons who have thus intruded themselves upon him? What more have the defendants done? They carry across the river, upon their boats, persons, teams and carriages. These come on board without solicitation; they pass over without molestation. No leave is given; no exclusion is attempted; no toll or fare is received. Can it be that this is a violation of the plaintiffs' exclusive right to maintain a ferry?

I am unable to see that the provisions in the agreement of April, 1840, whereby the corporation stipulates that no charge shall be made to the defendants for the right and privilege, at their own expense, to carry across the Hudson river the passengers and freight transported, or to be transported, upon their rail road, or their officers, agents and servants, or their engines, cars or other property, has any bearing upon the question under consideration. Indeed, I do not perceive the object of the parties in having such a provision inserted in the agreement. Certainly, in the present state of things, it can in no way affect the rights of either party. It seems to imply that while the corporation is to have no claim upon the defendants, in the cases specified in the agreement, there might be other cases in which some claim might justly be made. Perhaps the parties had in view some future arrange-

ment, whereby the defendants should, indeed, set up a regular ferry, transporting passengers from shore to shore for hire, and for which right and privilege the corporation might be entitled to compensation.

The agreement of the first of October, 1852, between the plaintiffs and the corporation of Albany, cannot affect the rights of the defendants. The plaintiffs thereby became the lessees of the corporation, and, as such, may maintain any action and obtain any relief to which the corporation would have been entitled, had no such agreement been made. The rights of the parties must be determined by the state of things existing after the execution of the agreement of the 23d of April, 1840.

Upon a careful examination of the case, I am unable to perceive any ground upon which relief can be granted to the plaintiffs.

I am, therefore, of opinion that the defendants are entitled to judgment.

[ALBANY GENERAL TERM, May 4, 1857. *Wm. B. Wright, Harris* and *Gould,* Justices.]