CHARLES DUSENBURY, Appellant, *v.* WILLIAM S. KEILEY as
Receiver, etc., Respondent.

Plaintiff was arrested at the instance of defendant, under the Stilwell Act
(Chap. 300, Laws of 1831), and gave bail ; upon hearing, however, an or-
der was made in February, 1877, vacating the warrant and exonerating
the bail, and plaintiff was discharged from custody.    Defendant there-
after removed the proceedings into the Supreme Court by *certiorari*, and
at a General Term, held in October, 1877, said order was reversed, the
order of reversal declaring that the proceedings "be, and the same
hereby are, revived and restored."    In January, 1878, this order
was made the order of the court below, and it was directed that plaintiff
"be required to appear under the original warrant and proceeding," and
that his bail produce him on a day specified.    On that day plaintiff volun-

tarily appeared, and an order was made that a commitment be issued, directing the sheriff to rearrest and commit him to jail until discharged according to law. No such warrant was ever served and no new arrest made. In an action for false imprisonment, brought in January, 1879, *held,* that the original imprisonment, which was conceded to have been illegal, was terminated upon the discharge; that the subsequent proceedings were not a continuance of such imprisonment, and did not amount to coercion, as plaintiff submitted to them voluntarily, simply to resist their legality; that the order reviving and restoring the proceedings did not revive the warrant for the imprisonment; and that, therefore, the action was barred by the statute of limitations. (Code of Civil Procedure, § 534.)

As to whether, if plaintiff had sued for malicious prosecution, the result would have been different, *quære.*

*Doyle* v. *Russell* (30 Barb. 305), distinguished.

(Argued May 5, 1881; decided May 31, 1881.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made February 2, 1880, which affirmed a judgment in favor of defendant, entered upon an order dismissing the complaint on trial.

The nature of the action and the facts are sufficiently stated in the opinion.

*Charles J. Hall* for appellant. Actual imprisonment is not necessary to constitute an imprisonment. (*Breakabeen* v. *Hegeman,* 22 Mich. 266; *Hawk* v. *Ridgway,* 33 Ill. 473; *Warner* v. *Riddiford,* 4 C. B. [N. S.] 206.) To sustain an action for false imprisonment it is sufficient to show that the defendant, at any time or place, in any manner restrained the plaintiff of his liberty or detained him in any manner from going where he wished, or prevented him from doing what he desired. (*Smith* v. *State,* 7 Humph. 43; *Bonesteel* v. *Bonesteel,* 28 Wis. 245; 30 id. 511; *Bird* v. *Jones,* 72 Barb. 743; 2 Inst. 589; 7 Bull. N. S. 62; *Wood* v. *Lane,* 6 C. & P. 774; *Whitehead* v. *Keyes,* 3 Allen, 495; *Lansing* v. *Case,* 4 N. Y. Leg. Obs. 221; *Searls* v. *Veits,* 2 N. Y. Sup. Ct. [T. & C.] 224; *Breakbeen* v. *Hegeman,* 22 Mich. 266; *Ahern* v. *Collins,* 39 Mo. 145;

*Murry* v. *Chase*, 100 Mass. 79; *Johnson* v. *Tompkins*, 1 Baldw. C. C. 571; *Doyle* v. *Russel*, 30 Barb. 305; 1 Term R. 536–7 Espenasse's Dig. 332; *Decker* v. *Jackson*, 16 N. Y. 443; *Winter* v. *Kinney*, 1 id. 365.) The effect of the General Term order reversing the acquittal, and the order of the justice founded thereon directing plaintiff to appear before him on the 15th day of January, 1878, was to revive the warrant and restore the parties to the position they were in prior to said acquittal. (*Robinson* v. *Plympton*, 25 N. Y. 484; *Wright* v. *Rowland*, 4 Abb. Ct. of App. Dec. 649.) In an action for false imprisonment every continuance of the imprisonment, *de die in diem*, is, in point of law, a new imprisonment, and therefore the time of limitation runs from the last day of such imprisonment, and not from the time of the issuing of the warrant. (*Hardy* v. *Ryle*, 9 B. & C. 608; *Massey* v. *Johnson*, 12 East, 68; *Bennett* v. *Brown*, 20 N. Y. 99; *Ball* v. *Gardiner*, 21 Wend. 270; Addison on Torts, § 848.)

*D. M. Porter* for respondent. An end having been put to the imprisonment more than two years before the commencement of this suit, this action cannot be maintained. (Code, § 384.) This is especially so as the bonds under which he was discharged, November 15, 1876, could not have been enforced. (*Broadhead* v. *McConnell*, 3 Barb. 175; *Homan* v. *Brinckerhoff*, 1 Den. 184; *Cadwell* v. *Colgate*, 7 Barb. 253; *Coleman* v. *Bean*, 32 How. 370, 381; *S. C.*, 3 Keyes, 97.) An action will lie at once for an arrest under a void Stillwell Act proceeding, without any reversal of the proceeding. (*Mosher* v. *The People*, 5 Barb. 575, 577.) The bonds having been given in a void proceeding, plaintiff's appearance was voluntary. (*Watts* v. *Willett*, 2 Hilt. 212; *People ex rel.*, etc. v. *The Justice*, etc., 74 N. Y. 406; *Dusenbury* v. *Keiley*, etc., 8 Daly, 537.) As by the judgment of February 3, 1877, not only was the defendant discharged, but his bail bonds were vacated and set aside, a reversal of the proceedings would not cause his rearrest, nor give validity to bonds which were void for want of jurisdiction. (*Brodhead* v. *McConnell*, 3 Barb. 175.)

FINCH, J.   This action was for false imprisonment and was successfully defended upon the ground that the time limited for its commencement had expired.   The plaintiff was arrested under what is known as the Stilwell Act on the 15th day of November, 1876.   He alleges in his complaint the arrest, his imprisonment in the office of the sheriff for several hours, his removal to the Superior Court where he was also imprisoned for several hours, and then, that he was detained and restrained of his liberty under and by force of the proceedings instituted until about the 26th day of April, 1879, and that such arrest was illegal and unauthorized and without reasonable cause. The original imprisonment and its illegality are not now disputed.   It is claimed, however, on the part of the defendant that such arrest and imprisonment terminated on the 3d day of February, 1877, and at that date the warrant was dismissed, vacated and set aside, the bail given by the plaintiff exonerated, and he himself discharged from custody and set at liberty. That fact is proven by the production of the decision and order of the justice of the Superior Court, before whom the proceedings were pending, and which terminated them in the manner and with the effect described.   When this order was made the plaintiff's imprisonment ended.   He went out of court entirely free, no longer in custody, in no respect restrained of his liberty.   The original warrant had spent its force, had accomplished its wrong, had been vacated and annulled, and become dead process.   A complete and perfect cause of action for the false imprisonment had arisen, and could at once have been maintained.   It was not brought within the time limited by the statute, and hence was wholly lost, and incapable of being enforced, unless subsequent events affected and changed the result.

Such is the contention of the plaintiff, and to sustain it, he relies upon the following facts.   After the discharge in February, the present defendant, by a writ of *certiorari*, removed the proceedings into the Supreme Court, and at a General Term thereof, held on the 15th of October, 1877, the determination of the Superior Court was reversed, and an order entered di-

recting such reversal, and that " the said proceedings had before the respondent, Hon. Gilbert M. Speir, as a justice of the Superior Court of the city of New York, be and the same hereby are revived and restored."

On the 7th day of January, 1878, this order of reversal was made an order of the Superior Court, and it was also directed that Dusenbury be " required to appear under the original warrant and proceedings," and that his bail produce him on the 15th day of January, 1878, for further proceedings according to law.

. Up to this date it is quite evident that since the February preceding, and for almost an entire year, the present plaintiff had been wholly free from imprisonment, entirely at large, and in no manner restrained of his liberty. The original imprisonment, therefore, was certainly not continuous beyond the discharge which ended it. When the last order was made he was under no arrest or restraint whatever. At the appointed time he appeared in the Superior Court. That appearance, so far as the evidence shows, was voluntary. Its purpose was to defend himself against a possible rearrest, and prevent any new imprisonment. At the close of the revived proceedings a decision was made adverse to Dusenbury, and the order thereupon entered directed " that a commitment be issued to the sheriff directing that he, as such sheriff, rearrest such defendant, Charles Dusenbury, and that said defendant, Charles Dusenbury, be committed to the jail of the county, to be there detained until he shall be discharged according to law." This order recognized that Dusenbury was not under arrest, that the original warrant was spent and had become dead process, and directs a new warrant and a new arrest under it. That new warrant was never served, and the new arrest was never made. The order directing it, affirmed by the General Term, was reversed in this court, and the original arrest pronounced illegal and without authority. That ended the controversy. Dusenbury, by his appeal to the courts, prevented the threatened rearrest, and from the time of his first discharge he was never at all imprisoned or put under restraint.

He claims, however, to maintain his action upon the ground that the proceedings following his discharge were coercive, and amounted to a continuance of the original imprisonment. We cannot so regard them. If the proceedings continued the imprisonment did not. After the reversal by the General Term Dusenbury appeared, as his counsel testifies, by request. No compulsion of any sort was applied. He might have put his prosecutor and the court to the test. He might have waited a new arrest, but chose rather to prevent it than to defy and punish it. He says his bonds remained, but they had been discharged and were absolutely void. (*Cadwell* v. *Colgate*, 7 Barb. 253; *Homan* v. *Brinckerhoff*, 1 Den. 184; *Coleman* v. *Bean*, 3 Keyes, 97.) The whole proceeding was without authority and illegal. (*People ex rel Dusenbury* v. *Speir*, 57 How. 274.) Certainly, therefore, after the actual discharge, the present plaintiff was in no manner restrained of his liberty. The pending proceedings, the war on paper, divorced from any personal restraint, could not coerce him, for they were without authority and powerless, and did not coerce him, as he submitted to them only to resist their legality, and did that voluntarily and not upon any compulsion.

It is argued that by the order of reversal of the General Term the original warrant and arrest were " revived and restored." Not at all. It was only the proceeding, the litigation, the prosecution that was revived, and ran on to its final determination. We do not see how that order could have the effect to revive an imprisonment which had ended, any more than a similar order could have revived a past assault and battery. There could be a new arrest, and a new imprisonment. The original warrant had exhausted its power and its office. It had become dead process, and could not be revived or continued in force. To put the party again under arrest or restrain his liberty required a new exercise of judicial power. (*Wood* v. *Dwight*, 7 Johns. Ch. 295; *People ex rel. Roberts* v. *Bowe*, 81 N. Y. 45.) The court and the prosecutor understood this fact. The new order, made after the reversal, and at the close of the second hearing, proceeded on the assumption, which was entirely sound, that

the old warrant was exhausted and Dusenbury at liberty, for it ordered the issue of a new commitment by force of which he should be again taken into custody. If that commitment had been executed, there would have been a new arrest, a new false imprisonment, a new cause of action — not a continuance of the first one. But the new trespass was not committed. The whole proceeding was reversed without, in the meantime, any interference with the personal liberty of the party assailed.

But it is said he thought he was coerced, he believed it was necessary to obey the orders of the court, and so, was under a sort of constructive compulsion. That can hardly be said of one who through his counsel is denying the jurisdiction of the court and insisting that its orders are illegal. But if otherwise the result sought would not follow.

In *Warne* v. *Constant* (4 Johns. 32) the prisoner stayed on the jail liberties after a *supersedeas*, under a mistaken idea that his liberty was not regained until a formal discharge by the sheriff, and for that cause brought an action of false imprisonment. It was held that his detention was his own act, purely voluntary, and it mattered not that he was mistaken as to his rights.

If, as was suggested by the courts below, the plaintiff had sued for a malicious prosecution, either by itself or in addition to his claim of false imprisonment, as was the case in *Doyle* v. *Russell* (30 Barb. 305), upon which the appellant largely relies, the result might have been different.

It would be very just that plaintiff should have a remedy for the long prosecution which he has endured, but the remedy which the law gave him has been lost by his own delay, and cannot be restored to him.

The judgment should be affirmed, with costs.

All concur, except FOLGER, Ch. J., absent.

Judgment affirmed.