Schmeider *v.* McLane.

---

## Schmeider *vs.* McLane and Dufour.

Rules 15 and 28 of the general rules made by the Metropolitan Police Board, for the government of the police, which direct that all persons who shall be arrested any time when the police courts are not open shall be conveyed immediately to the police station house of the policeman who makes the arrest; and that when a person accused of having committed a *felony* or *misdemeanor* is brought to the station house when the police courts are not open, the officer on duty, after ascertaining that the act charged constitutes a felony or other offense for which a person can lawfully be detained, &c. shall cause the accused to be detained in the station house until the next morning, will not justify the imprisonment in the cell of a station house, of a person who is charged with no offense, other than the breach of a municipal ordinance against riding horses on the sidewalks.

Where a person is arrested in the day time, in the city of Brooklyn, for violating a city ordinance, it is the duty of the officer to take him before the police justice, or one of the justices elected under the act to establish courts of civil and criminal jurisdiction in that city, passed March 24, 1849.

There is a wide difference between the perpetration of a crime, and the violation of a corporation ordinance. *Per* Brown, J.

The 28th of the general rules of the Metropolitan Police Board directing the officer on duty to ascertain that the act charged constitutes a felony or other *offense* must be construed to mean a *criminal* offense, and nothing less. *Per* Brown, J.

APPEAL from a judgment of the city court of Brooklyn, entered upon the verdict of a jury.

*P. V. R. Stanton*, for the defendants.

*J. W. Gilbert*, for the plaintiff.

*By the Court*, BROWN, J. The plaintiff is the principal of a private school in the city of Brooklyn, and was arrested by one Jeremiah Clark, a policeman of the city, without process, for riding his horse on the sidewalk on Ninth street, between 3d and 4th avenues, in the presence and view of the officer, and in violation of one of the ordinances adopted by the common council of the city. The arrest was made at 5½ o'clock in the afternoon of the 21st of February, 1861. The defendant Benjamin B. McLane is the captain and the defendant John Dufour the sergeant of the metropolitan police force, 8th precinct, in the city of Brooklyn. The plaintiff, immediately upon his arrest, was taken to the station house of the 8th precinct, by officer Clark, and at 6 o'clock in the afternoon delivered to the defendants, who received him into their custody, examined and searched him, and took from his person such money as he had and put him him in a cell, where he was confined until the next morning; at which time he was taken before the police magistrate. He there paid the fine imposed by the ordinance, had his money restored to him and was discharged. His horse, which had been put into the pound and kept during the night, was also restored to him upon his paying the pound keeper the sum of fifty cents. He thereupon commenced his action against the defendants, for the wrong done to his person, alleging the detention and imprisonment by the defendants to have been oppressive and unjustifiable, and without the authority of law. The defendants in their answer set up the breach of the city ordinance, in presence and view of the officer, the plaintiff's arrest therefor and commitment to them for safe

Schmeider *v.* McLane.

keeping, and their right as officers and members of the metropolitan police force to detain him for hearing before the police magistrate. The jury found a verdict for the plaintiff for $100, upon which judgment was entered, and from which the defendants duly appealed upon exceptions taken to the charge of the city judge to the jury; which I will proceed to examine.

The city ordinance was produced and proved, and its violation by the plaintiff in presence and view of the officer was not controverted. It also appeared, from the evidence of James H. Cornwall, who was the police magistrate at the time, that the usual hours during which the police courts were open for the transaction of business at the city hall, were from 9 o'clock A. M. to 4 o'clock P. M., during each day. That the witness then resided within the city, at No. 101 Clermont avenue, and Justice Blatchley, another magistrate, resided one mile and a half nearer the 8th precinct station house than the witness. The witness also said he was then in the habit of transacting business at the different station houses. The defendants also read in evidence certain general rules made by the Metropolitan Police Board, for the government of the police, rule 15 of which directs that " all persons who shall be arrested during the time the police courts are directed to be kept open, shall be taken immediately to the police court in the police district to which the policeman who may make the arrest may be attached; and all persons arrested at any other time shall be conveyed in like manner to the police station house of the policeman who may make the arrest." Rule 28 also directs, that "when a person accused of having committed a felony or misdemeanor is brought to the station house when the police courts are not open, the officer on duty to whom the complaint is made, is only to ascertain from the person preferring it that the act charged constitutes a felony or other offense for which a person can lawfully be detained, and that there is reasonable ground for the complaint against the party ac-

cused. He will then enter the name of the prisoner on the blotter, and cause him to be detained in the station house until the next morning. He will also enter the name and address of the complainant and witnesses on the blotter, and take the necessary measures to insure their appearance before the magistrate in the morning." It was under the authority of these regulations that the defendants sought to justify the imprisonment of the plaintiff. When the evidence was closed, the judge instructed the jury that the imprisonment was without legal authority, and the only question for them to determine was the amount of the damages the plaintiff should recover for the detention. To this charge and instruction the defendants' counsel excepted. He also asked the judge to charge that it was a question of fact for them to determine, whether or not the hour at which the plaintiff was brought to the station house was a reasonable one to have taken him before a magistrate. This the judge refused to do, but instructed them it was a question of law and not of fact, as to the reasonableness of the hour, (there being no dispute that it was 6 o'clock in the afternoon.) And, as matter of law, he instructed them that 6 o'clock P. M. was a reasonable hour at which to have taken the plaintiff before a magistrate. To which refusal and charge the counsel for the defendants excepted.

The power of the board of metropolitan police to make the regulations referred to was not questioned, upon the argument. The authority given to the members of the police to arrest persons in the act of committing crimes, or accused, upon reasonable and probable cause, of committing crimes, and their detention until an examination can be had before the committing magistrate, is indispensable to the due execution of the criminal law and the protection of the community. The power, however, should be carefully and discreetly exercised, and not extended to acts reprehensible, and which may subject the offender to some measure of punishment, but which are not criminal. There is a wide difference between

Schmeider *v.* McLane.

the perpetration of a crime and the violation of a corporation ordinance. The former implies moral turpitude, and is presumed to be committed *malo animo ;* while the latter involves no moral guilt, and may have been inadvertently, nay innocently, committed. The omission to remove the snow and ice from the sidewalks of a populous city may be as much a violation of a corporation ordinance, to which a penalty is attached, as to ride a horse upon the sidewalks of the same city. Neither of them are crimes, and no one conversant with the nature and principles of the criminal law would regard, or think to punish, them as crimes. The distinction between public crimes and private injuries is created by positive law and referable only to civil institutions. "A crime or misdemeanor is an act committed or omitted in violation of the public law either forbidding or commanding it. This general definition comprehends both crimes and misdemeanors, which, properly speaking, are mere synonymous terms, though in common usage the word crimes is made to denote such offenses as are of a deeper and more atrocious dye ; while smaller faults and omissions of less consequence are comprised under the gentler name of misdemeanors only." (4 *Black. Com.* 5.) To subject a person, without trial or examination, to search and examination of his person, and to confinement during the night in the cell of a station house, who is charged with no offense but the breach of a municipal ordinance in regard to the mode of passing over the public streets, would be a needless piece of severity, if not of actual barbarity, and one which I do not think it was the intention of the legislature or the board of metropolitan police to inflict. The 28th of the general rules already referred to speaks of persons accused of having committed a felony, or misdemeanor, brought to the station house when the police courts are not open. And although the same sentence directs the officer on duty to ascertain that the act charged constitutes a felony or other offense, the latter word must be construed to mean a criminal offense, and nothing less; because the obvious purpose of the

rule is to prescribe the duty of the police officers in their treatment of persons charged with crimes. The term crime, or offense, when used in any statute, shall be construed to mean any offense for which any criminal punishment may by law be inflicted. (2 *R. S. 2d ed.* 587, § 33.) And so the doing of an act which is prohibited by statute, to which there is a penalty attached, is not a misdemeanor. There are offenses against morality, against the laws of health, against good breeding and the order and decorum of social intercourse, &c., but when the law speaks of offenses, it means those of which the law takes cognizance, and for which criminal punishment may be inflicted. We are not left, however, to conjecture or construction as to the duty of the members of the police who may arrest persons thought to have committed a breach of a corporation ordinance, and to have incurred a penalty therefor. The common council of the city of Brooklyn derive their power to make and establish ordinances and by-laws, by virtue of the act to consolidate the cities of Brooklyn and Williamsburgh and the town of Bushwick, passed April 17, 1854. The 20th section of title 6 of the act prescribes the mode of enforcing such ordinances, and declares that any person arrested in pursuance of the act, for the violation of any ordinance, by-law or regulation of the common council, or of the board of health, may be taken before the police justice, or either of the justices elected under the act to establish courts of civil and criminal jurisdiction in the city of Brooklyn, passed March 24, 1849, who shall thereupon have authority to impose upon such person a fine not exceeding the penalty prescribed by the ordinance which such person shall be proved to have violated, and to commit such person to the county jail of Kings county for a period not exceeding thirty days, or until such fine shall be paid. In the present case the plaintiff was arrested in open daylight, at half past five o'clock in the afternoon. It was the duty of the arresting officer to have taken him before a magistrate, in compliance with the plain directions of the act. He was

delivered over to the defendants at 6 o'clock on the same day. They had no power to receive or to detain him. They were mistaken in respect to the extent of their authority, and so their defense of justification failed upon the trial. The city judge was right in saying to the jury that the only question for their determination was the amount of the plaintiff's damages.

[DUTCHESS GENERAL TERM, May 12, 1862. *Emott, Brown, Scrugham* and *Lott,* Justices.]