BRIDGET TOBIN, Respondent, *v.* .CHARLES E. BELL and Others, Appellants.

*Arrest, by a private person, of one committing a misdemeanor — the person arrested must be taken before a magistrate without delay — proof as to false imprisonment.*

A private person who detects another in the act of committing or attempting to commit a crime, even though a misdemeanor, may lawfully arrest such person.

In an action to recover damages for false imprisonment, the defendants cannot avail themselves of the defense that they arrested the plaintiff while attempting to commit a misdemeanor in their presence, unless they took the plaintiff before a magistrate without unnecessary delay, as required by section 185 of the Code of Criminal Procedure, relative to arrests by private individuals.

What evidence given upon the trial of an action to recover damages for false imprisonment establishes that a verdict for the plaintiff was against the weight of the evidence, considered.

McLENNAN and WILLIAMS, JJ., dissented.

APPEAL by the defendants, Charles E. Bell and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cattaraugus on the 1st day of October, 1901, upon the verdict of a jury for $175, and also from an order entered in said clerk's office on the 1st day of October,

1901, denying the defendants' motion for a new trial made upon the minutes.

*Allen J. Hastings*, for the appellants.

*Henry Donnelly*, for the respondent.

SPRING, J.:

This is an action for false imprisonment. The defendants Bell are the proprietors of a department store in the city of Olean, and the defendant Johnson is in their employ. The plaintiff, a married woman, went to their store on Monday, December 19, 1899, about noon, ostensibly to exchange a pair of rubbers and have buttons sewed on some shoes she had purchased at the store the preceding Saturday. She looked at the Christmas goods throughout the store and at the jewelry counter tried on a ring. Her version of the occurrence is that while she was doing this the defendant Johnson came up to her and accused her of stealing the ring. She denied it and returned it to the tray on the counter. Mr. Johnson then ordered her to go to the office in the store, which she did, and was then charged by the defendants with stealing, and was told she must pay twenty-five dollars, as goods to that amount had been stolen from the store. The plaintiff had a new pocketbook with her and the defendant Johnson asked her where she got it and she said at their store on the Saturday evening previous, paying for it seventy-five cents. A lady clerk was called up and stated that she did not sell the pocketbook to the plaintiff.

The plaintiff further testified : " I wanted to go home and they wouldn't let me leave the office, and after a while they let me go and they wouldn't give me my pocketbook or rubbers. He wouldn't give me the package. Mr. Johnson said, ' You may leave your money and it will be safe.' I had $25 and my receipt for my grocery bill. I said in reply, ' No, sir,' and I took my money and went."

Again she testified that Mr. Johnson directed her to stay in the office, saying : " You sit down there, * * * we will have an officer here ; " and she remained in the office about an hour. Continuing she said : " I was kept in the office an hour sitting down on the chair, when I got sick and went upstairs, and came back to the

office. Mr. Johnson was at the door and said, 'Come back in here.' I don't know how long I sat there after I came back from upstairs.'

The defendants said they would send an officer to search her house. A warrant for that purpose was obtained, and an officer went to her house that afternoon, but made no search.

If the plaintiff's version of the transaction is to be credited the jury were warranted in finding that there was no reasonable ground for her detention and that she was unlawfully deprived of her liberty, which constitutes the essence of the action. (Add. Torts [Wood's ed.], § 798; *Limbeck* v. *Gerry*, 15 Misc. Rep. 663.) "The gist of such an action is an unlawful detention." (*Burns* v. *Erben*, 40 N. Y. 463, 466.)

The story of the plaintiff was very pointedly disputed by the defendants and their witnesses. Jennie Shaner, who was then in the employ of Bell Brothers, testified that she had charge of the sterling silver near the jewelry counter and observed the plaintiff, after trying on a ring, putting it in the case saying it was too large, then going away and afterward returning to the ring counter and inspected the ring again. That she then went toward the shoe counter and the witness discovered that the ring which plaintiff had been trying on was gone and called the attention of Miss Myers, who was in charge of the rings, to the circumstances, and that lady also noticed that the ring was not there and immediately went to the office, and shortly afterwards the witness observed Mr. Johnson talking with the plaintiff, thirty feet from the ring counter. Miss Myers, after testifying that she observed the plaintiff inspecting and handling the four rings on the tray, and that Miss Shaner spoke to her concerning the ring, described what occurred in this way : " I looked at the case and there was only three rings remaining, and then I reported the case at the office window to Mr. Johnson. There were four rings in the case when I placed it on the counter not five minutes before that. There was no other customer near the counter or anybody else that I saw have the case or look at the rings besides Mrs. Tobin, between the time I put it on the counter and the time Miss Shaner called my attention to it. After Mr. Johnson came out I did not hear anything said; I heard Mrs. Tobin say, ' I didn't intend to steal it, but just wear it awhile.' She was near the hosiery counter down near the office when she said that."

These clerks, who had not been in the employ of the defendants for two years prior to the trial, contradict the plaintiff, as she had testified that Mr. Johnson directed her to go to the office while she was at the ring counter trying on the rings, and their testimony not only is that she had left the counter, but under circumstances justifying the suspicion that she had stolen the ring. Mr. Johnson testified that when apprised of what had occurred he left the office and overtook the plaintiff at the hosiery counter, thirty feet distant from where the rings were kept, and continues his story : "I stepped up to her and asked her if she wanted to pay for that ring. She said, 'I haven't got any ring.' * * * I said, 'Come with me to the office,' and on the way to the office she took the ring either off her finger or out of her hand and said, 'For God's sake don't expose me for this thing.' We passed on from there to the office, and about that time Mr. Bell was going along on his way to dinner, as I remember it, and as he approached the door to the private office I said to Mr. Bell, 'Here is the woman who has been found with a ring in her possession.' He said, 'Is that so,' and I turned and looked at her and said, 'I am very sorry to hear anything of the kind.' She rose to her feet and said, 'Mr. Bell, I have a large family of children and I don't want you to prosecute me.'"

And again : "Then Mr. Bell said, 'We found this pocketbook in your possession and the ring in your possession, and I don't know how much more you have taken.' He turned to me and said, 'How much does the stolen account amount to?' and I said, 'Something like $25.' Then I think Mr. Bell went in — during this interval he came around into the office * * * and asked that question. And I think Mr. Bell turned around and went out and I followed him, and he said to Mrs. Tobin, 'I don't know but what you have taken lots of things. We have had a good deal stolen. Maybe you have taken all of this. I don't know anything about it.' But I don't recall what followed that now, just this moment. There was something said about us searching the house. I think he spoke something about that he would have a search warrant."

The witness said that the plaintiff remained in the office voluntarily for about an hour, and no restraint was exercised over her ; that she left the office twice, returning of her own accord. It appears that when inquired of concerning the pocketbook she said that she

had purchased it at the store for seventy-five cents, and the defendant George Bell testified that the pocketbook was a new one, selling for three dollars and fifty cents, and contained a slip stating the cost price and nothing else. The clerk, Miss Crocker, who was at that time identified by the plaintiff as the clerk who had sold her the pocketbook, denied this, testifying that it was one of the most expensive in the store, and that they were very infrequently sold. A pocketbook was produced on the trial containing the cost price and a slip of paper, and identified by Johnson, Bell and Miss Crocker as the one the plaintiff had at the time of the alleged arrest, and which since that time had been retained by the defendants. Mr. Bell corroborated the defendant Johnson, and testified that he was informed in the office that the plaintiff had stolen a ring, and she said : " ' Mr. Bell, now don't be hard on me. I am a poor old lady and I have got a family of nine or eleven children,' I think she said. She said, ' It is a little thing and I hope you won't be hard on me.' " Both testified that nothing was said about arresting her or sending for an officer. When the question of the pocketbook came up she remained with apparent willingness, certainly without restraint, for the purpose of meeting Miss Crocker, who, she claimed, had sold her the pocketbook. As has been seen, the plaintiff testified that she had twenty-five dollars in the pocketbook which she took out, and that the defendants desired to retain this. The defendants deny that she had any money in the pocketbook or produced any at all.

The verdict is clearly against the weight of the evidence. The plaintiff is unsupported in her story and is contradicted by four witnesses, two of whom are disinterested. While actions of this kind, as a rule, are peculiarly for the jury to determine, yet when the evidence is overwhelmingly against any unlawful detention and tends very strongly to show that the plaintiff was the culprit instead of the defendants, we are impelled to intervene to prevent the defendants being mulcted in damages unjustly.

In his instructions to the jury the court stated that a private person may not arrest another for the commission of a misdemeanor. If the plaintiff was apprehended by the defendants in the act of committing or attempting to commit a crime even though a misdemeanor, the arrest by them would be lawful. (Code Crim. Proc.

§ 183; *Greater New York Athletic Club* v. *Wurster*, 19 Misc. Rep. 443, 450.)

In the present case, however, the defendants did not take the plaintiff before a magistrate, and the mandate of the statute ·is that this must be done without unnecessary delay. (Code Crim. Proc § 185.) It may have been found, if there was any detention, that the plaintiff was arrested while attempting to steal the ring and in the presence of the defendants, but in order to avail themselves of this defense they must have taken her to a magistrate. (*Pastor* v. *Regan*, 9 Misc. Rep. 547; referred to approvingly in *Snead* v. *Bonnoil*, 49 App. Div. 330, 335.)

If the rule were otherwise it might result in compounding offenses of this kind, and if the person is arraigned and discharged, that establishes his innocence, and if held, it makes effective the justification of the conduct of the person making the arrest and shows probable cause unmistakably.

The judgment should be reversed on the facts, and a new trial granted, with costs to abide the event. ·

HISCOCK and DAVY, JJ., concurred; McLENNAN and WILLIAMS, JJ., dissented.

Judgment and order reversed upon the facts, and new trial ordered, with costs to the appellants to abide event.