DAVERN v. DREW.

(Supreme Court, Appellate Division, First Department. December 20, 1912.)

1. FALSE IMPRISONMENT (§ 15*)—CRIMINAL LIABILITY—RESPONSIBILITY FOR ARREST.

Where the executive officer of an association, interested in the prosecution of certain crimes, informs the police that he has a man who will identify plaintiff as the man wanted in another state for a crime in which the association is interested, and calls at police headquarters after plaintiff's arrest and in conversation charges him with being the person wanted, and sends telegrams to the other state with reference to the matter, he is liable for the damages consequent upon plaintiff's wrongful arrest and imprisonment, although not present at the time the arrest was made.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 5–67; Dec. Dig. § 15.*]

2. FALSE IMPRISONMENT (§ 4*)—CIVIL LIABILITY—RESPONSIBILITY FOR ARREST.

In order that a person who instigates the arrest of an innocent person may be held civilly liable therefor, it is not necessary that he shall have acted in bad faith and with the purpose of deceiving the officers.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 16; Dec. Dig. § 4.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. FALSE IMPRISONMENT (§ 36*)—EXCESSIVE RECOVERY.

> A recovery of $2,000 for plaintiff's false arrest and detention for two days, during which he was locked up, taken before the magistrate, photographed, measured and his finger prints taken, was excessive and should be reduced to $1,000.

> [Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 113–115; Dec. Dig. § 36.*]

> Ingraham, P. J., and Scott, J. dissenting.

Appeal from Trial Term, New York County.

Action by James F. Davern against Walter Drew and others. From judgment for plaintiff, and denial of new trial, defendant Drew appeals. Affirmed, on conditions.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

John W. Hart, of Auburn (Paul Kupfer, on the brief), for appellant.

P. Henry Delehanty, of New York City (Sumner B. Stiles, of New York City, of counsel), for respondent.

CLARKE, J. The action was brought against a city magistrate, two police officers and the appellant, Drew. The jury found a verdict of 6 cents against the magistrate, exonerated the police officers, and found for $2,000 against Drew.

On February 5, 1907, the grand jury at Ashtabula, Ohio, indicted one Stephen Davern upon the ground of felonious assault. On May 11, 1908, the Governor of this state received extradition papers from the Governor of Ohio and issued his warrant, which was received by the police commissioner on May 12, 1908. The claim was that on July 14th Drew caused the plaintiff to be identified as Stephen Davern, the person whose arrest and extradition was called for by said papers. He was arrested, locked up, taken before the magistrate, photographed, measured, his finger prints taken, and held over until the 16th, when a telegram was received from the Ohio authorities that the person held was not Stephen Davern, but his brother, James F., whereupon he was discharged.

Plaintiff testified: That he was an iron worker. That in July, 1908, he was living at 365 East 119th street. He had been a resident of the state and city six to eight years. He was working, and had been working just before July 14th, for the George A. Fuller Construction Company. He had received a fall on the 12th of May, and had been laid up by reason thereof, and been under the doctor's care until July 14th.

Drew was the executive officer of the executive committee of the National Erectors' Association, composed of a number of firms formed for mutual assistance in the conduct of labor matters. It was his special business to render such assistance as he could whenever said members of the association had any trouble in connection with carrying out their labor policy, and it was his duty to investigate crimes of violence, and to gather evidence of the commission of any crimes

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of violence in connection with such members. It seemed that he had had previous relations with Police Captain Carey, who was at that time in the Detective Bureau. He also seems to have had a man by the name of Harry Boss, or "Red" Boss, a structural iron worker foreman, more or less in his employ. It is quite evident that Boss was a spy, working from within the labor ranks, who gave information to this executive member. Drew testified:

"As executive member of my association I have been interesting myself for a considerable period of time in ascertaining the whereabouts of Stephen Davern before this arrest.".

Drew informed Carey that Boss had known Stephen Davern for a number of years, and could identify him as the person wanted under the extradition, and that if Carey would send officers to Drew's office he would introduce him to Boss, and Boss would make the identification. Carey directed Officers Wood and Fogarty to see Drew and go with Boss, and upon his identification execute the warrant. This they did.

They were introduced to Boss, and went with him to the neighborhood of plaintiff's house. The officers testified that Boss pointed out plaintiff to them on the sidewalk and that they arrested him; that he said he was not Stephen, but was Jim, and that he called up to his wife, "Girlie, they have arrested me for Steve," and she came down, brought him his coat, and protested that he was Jim; that he showed his watch, in which his name was engraved, but nevertheless he was taken down to police headquarters. Carey telephoned to Drew, and Drew came to police headquarters. There again plaintiff asserted his identity, and produced his labor cards for purposes of identification, and insisted that he was Jim, and not Steve. Plaintiff testified that Drew then said to him:

" 'You are Stephen Davern. We have got the goods on you, and you might as well throw up first as last. We have got you right anyhow, dead right,' he says, 'and you might as well throw up right here and be done with it, and it will go easier with you.' * * *"

In the courtroom:

"He says: 'You might as well make it easy for yourself. We have got you now.' When they took me down into the court the next afternoon, Mr. Drew came over. * * * He says: 'I have looked you up. I have been over to Thompson & Starrett's office, and I have looked over their books. * * * You were away off this job three days. You had time to go to Ashtabula and come back and turn the trick off. Why don't you give up and be done with it?' * * * I will swear Mr. Drew spoke to the magistrate on the first day I was brought before Magistrate Breen. * * * Mr. Drew was there the second day, the 15th of July. * * * On that occasion, when I came into the courtroom, he came right up to me and sat down alongside of me."

Drew testified:

"Captain Carey showed me this little book; that was his due book (plaintiff's exhibit). I called Captain Carey's attention to the fact that his own book showed that he had been in Cleveland and Ashtabula just a few months prior to this assault."

Plaintiff was taken before a city magistrate, in violation of the provisions of section 827 of the Code of Criminal Procedure, which requires a person under extradition papers to be taken before a justice of the Supreme Court or a justice of General Sessions, and provides for a speedy hearing and for testing the question of identity in a habeas corpus proceeding. Before the magistrate a short affidavit was made by one of the officers, Fogarty, and the magistrate was asked to commit him for 24 hours, which he did. They came down again the next day, and another request for 24 hours' adjournment was made and given. In the meanwhile Inspector McCafferty, on July 14th, had telegraphed out to the prosecuting attorney at Jefferson, Ohio:

"We have arrested a man answering description of Stephen Davern; claims his name is James F. Davern, and that he is a brother of Stephen Davern, and he was in Ashtabula in May, 1907, and is known to Chief of Police Lask. Answer."

On the 15th Drew, on his own initiative, telegraphed to the prosecuting attorney:

"Wire immediately complete description of man wanted, including complexion, eyes, nose, teeth, shape of face, weight, and also points of difference between him and James. Which one has scar between eyes? Man here is identified as Steve, and will be held until to-morrow noon."

On the 16th Taylor, the prosecuting attorney at Jefferson, telegraphed to McCafferty a description of Steve, saying also:

"Jim wore mustache when seen in Chicago two weeks ago. They both would fit this description, exception of mustache. Can't you forward picture of man and hold him. Charge fugitive from justice until picture is identified. Answer."

And also telegraphed Walter Drew, commissioner of National Erectors' Association:

"Have just had description sent by officers of Ashtabula to Inspector McCafferty. Satisfy yourself before release."

On the 17th Taylor wires to McCafferty:

"Photograph received. Man arrested is James Davern, and not Steve. Release."

And thereafter the plaintiff was released from custody. It is very significant that Drew admits that he did not communicate these telegrams to Captain Carey. This shows he was acting on his own initiative and judgment, and did not rely on Carey. It also appears that Carey and the officers did nothing without the presence of Drew and were evidently relying upon him.

[1] This is a brief statement of this record, but from it it is clear, I think, that Drew, in the prosecution of his work, gave information to the police and instituted the proceedings under which the plaintiff was arrested. He informed them that he had a man who would positively identify Steve Davern, and he produced the man and put him in contact with the police. He was immediately called down to headquarters after the arrest, and had himself a personal conversation with the plaintiff. He also appeared in the police court, and he also

busied himself in sending telegrams to Ohio. His general authority in the matter is illustrated by the telegram of the prosecuting attorney at Jefferson that *he* should satisfy himself before release. He attempts to avoid responsibility upon the ground that he merely gave information to public officials, and therefore was not personally responsible for the exercise by them of their discretion and determination upon information, and he also repudiates the suggestion of identification upon his own part, but that he simply put them in touch with the man whom he believed upon his own knowledge could make the identification.

In Grinnell v. Weston, 95 App. Div. 454, 88 N. Y. Supp. 781, Mr. Justice Ingraham, in discussing the question, in reviewing Thompson v. Fisk, 50 App. Div. 71, 63 N. Y. Supp. 352, said:

"If that case determined that where an individual requires a police officer to arrest an innocent person, and the police officer, acting upon the statement made, makes the arrest, that the person instigating the arrest is not liable if the police believed him, I think it is contrary to all the decisions and settled law of this state. A peace officer has authority to make an arrest without a warrant where a felony has been committed, and when he has reasonable cause to suspect the person arrested of having committed it, and if the officer acted in good faith, and was justified in making the arrest, he is protected; but the fact that the police officer is justified does not absolve the individual at whose request the arrest has been made from liability, if in fact no felony has been committed, or the person arrested was not connected with the commission of a felony, and this distinction arises from the difference in the power of a police officer and a private individual to make an arrest. If a private individual identifies a person as one who has been guilty of a crime, and requires a police officer to arrest him without a warrant, the arrest is the joint act of the private individual and the peace officer, and if the arrest is unwarranted and illegal, both the police officer and the private individual are joint tort-feasors, and both are liable for the wrong. The fact that the officer, acting under the information given to him by the individual, is the one that takes the physical possession of the person arrested, does not relieve the private individual from responsibility. Both the individual and the officer united in the act, and are both responsible for the arrest, if unlawful. While the officer may prove a justification, * * * the person instigating the arrest, and who was jointly responsible with the police officer for it, to justify himself, must show that a felony has been committed, and that the person arrested was connected with it, or at least that he acted upon grounds which would justify a prudent person in believing that the person arrested was guilty. It would certainly be a strange result if a person at whose instigation another was arrested could escape responsibility for a false arrest and detention by showing that he had induced a police officer to believe a false statement of another's connection with a crime, so that the police officer would be justified in believing such false statement in making the arrest. That the police officer was justified does not justify the individual who induced the officer to make the arrest. Of course, to connect an individual with the arrest, it must be shown that he was the instigator and caused the arrest to be made. Merely furnishing information to a police officer, when called upon to state facts for his guidance, although such information is subsequently shown to be inaccurate, does not make the person making the statement a joint actor with the police officer in making the arrest. It is only when the action of the police officer is instigated or procured by the private individual, and the police officer acts, not upon his own volition, but to carry out a request, so that the private individual in effect procures the officer to make the arrest, that the individual becomes a joint actor with the officer in making the arrest, and this is the effect, I think, of all the authorities. * * * In Farnam v. Feeley, 56

N. Y. 451, Judge Andrews says: 'If the defendant directed the officer to arrest the plaintiff, and he took her into custody in consequence of such direction, the defendant is liable as in an action for false imprisonment, unless he gave evidence establishing a justification.' "

I think that there can be no doubt that this arrest was instigated by Drew. At any rate it was a fact for the jury. It was not error not to direct a verdict, or to dismiss the complaint as to him. In regard to Drew the court charged:

"Now, as to defendant Drew, if you determine, gentlemen of the jury, that the defendant Drew did nothing more or less than simply furnish information to the police authorities, upon which they acted, and that, although there was a mistake in such information, the information was furnished in good faith, and simply for the purpose of aiding the police in apprehending the party mentioned in the Governor's warrant, then your verdict ought to be for the defendant Drew; but, if the proceedings that led up to the arrest of this plaintiff were instituted by Drew, if he directed by any method the arrest of this man, although he was not present at the time, if he directed the arrest and aided it, why then your verdict ought to be for the plaintiff as against the defendant Drew."

And again:

"Now, as to the defendant Drew, if you determine that the plaintiff is entitled to a verdict against the defendant Drew, you have a right to consider the position he was in, the information that he furnished, whether he was misled into that position, all these are circumstances that may be considered by the jury in determining what would be a proper compensation to award the plaintiff, if you find the plaintiff is entitled to a verdict, and such verdict may be from six cents upwards."

[2] Counsel for Drew said:

"I ask your honor to charge the jury that from the time the plaintiff was taken into custody by the police officers he was subject to the control and direction of the said officers, and subsequently to the magistrate before whom he was arraigned, and the defendant Drew had no power to require either the detention or the release of the prisoner, and cannot be held liable for the exercise of any judgment or discretion on the part of such police officers or magistrate, unless it is proven to the jury's satisfaction that the defendant Drew, in bad faith and with the purpose of deceiving the police officers, caused the arrest and detention of the plaintiff.
"The Court: I refuse to charge in the language requested."

That refusal was proper, because the latter part of that request injected "bad faith and with the purpose of deceiving the officers," which is not an element.

"Counsel for Drew: Exception. I ask your honor to charge the jury that the defendant Drew is not liable for the imprisonment of the plaintiff on the commitment by the city magistrate.
"The Court: I refuse to charge that. (Exception.)
"The Court: I charge the jury that if the action of the defendant Drew was not for the purpose of giving information, but was for the purpose of bringing about the arrest of this plaintiff, and if you find that the plaintiff is entitled to a verdict against the defendant Drew, he is liable for all subsequent acts, if the proceedings were incited or started by him, and were not started for the purpose of furnishing information to the police.
"Counsel: I except to that."

It seems to me that the court was right; that if this whole proceeding was instigated, planned, and engineered by Drew, as the jury had

a right to find from the evidence, acting in his capacity as private prosecutor for the benefit of the association of which he was the executive officer, then it must follow, I think, that he was responsible for all the logical and necessary consequences of such act.

[3] On this record Drew was absolutely responsible for this arrest; at least it was a question of fact for the jury, and the evidence is sufficient to sustain the verdict. The amount of the verdict, however, seems excessive, and should be reduced to $1,000.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event, unless the plaintiff stipulates to reduce the verdict to $1,000, in which event the judgment, as so modified, and the order appealed from, will be affirmed, without costs in this court to either party.

LAUGHLIN and MILLER, JJ., concur.

SCOTT, J. (dissenting). The action is for damages for false imprisonment. It appears that at some time prior to February 7, 1907, one Stephen Davern, the plaintiff's brother, was indicted in the state of Ohio for felonious assault. A request for the arrest and extradition of said Stephen Davern was transmitted by the Governor of Ohio to the Governor of this state, who thereupon issued his warrant for the arrest of said Stephen Davern, which warrant was received by and filed in the office of the police commissioner of the city of New York on or about May 11, 1908. It thereupon became the duty of the police to arrest the said Stephen Davern if he should be found within the city of New York.

The defendant Drew resided in the city of New York, was the commissioner and executive member of the executive committee of the National Erectors' Association, an organization of firms engaged in the business of erecting structural steel and iron work, which was formed for the purpose of mutual assistance in the conduct of labor matters. Drew had had nothing to do with the indictment of Stephen Davern in Ohio, but it was a part of his duty to aid in the investigation and prosecution of crimes in consequence of labor troubles, as it is to be inferred that the crime charged against Stephen Davern had been. Drew did not know Stephen Davern, but he received information from one Boss, who claimed to know Davern, and to have worked with him, that said Stephen Davern was in the city of New York. He communicated this information to Police Captain Carey. The police authorities thereupon interrogated Boss, and upon his identification arrested plaintiff, believing him to be Stephen Davern. Otherwise than as above stated, Drew had no part in the arrest of plaintiff. He did see him at police headquarters and in court, and interrogated him as to his identity, and sent a telegram to the prosecuting attorney in Ohio, asking a description of the real Stephen.

The plaintiff has sued, in addition to the appellant, the two police officers who made the arrest and the city magistrate who held the plaintiff. The jury exonerated the police officers, found a verdict for six cents damages against the magistrate, and a substantial ver-

dict against the appellant. The trial justice charged the jury as follows:

"Now, as to the defendant Drew, if you determine, gentlemen of the jury, that the defendant Drew did nothing more or less than simply furnish information to the police authorities, upon which they acted, and that, although there was mistake in such information, the information was furnished in good faith, and simply for the purpose of aiding the police in apprehending the party mentioned in the Governor's warrant, then your verdict ought to be for the defendant Drew."

This was not only an accurate statement of the law (Brown v. Chadsey, 39 Barb. 253; Farnam v. Feeley, 56 N. Y. 451; Teal v. Fissel [C. C.] 28 Fed. 351; 19 Cyc. p. 329); but it constituted the law of the case for the jury, which it was their duty to follow. If they followed it, they should have found in favor of the appellant; for there is not a particle of evidence that he did anything more than to communicate to the police, in good faith, information which he believed. That he was desirous that Stephen Davern should be apprehended we do not doubt, and no blame can properly attach to him for entertaining such a desire, but there is nothing to suggest even a suspicion that he was actuated by any motive hostile to plaintiff.

The verdict, we are all agreed, was too large in any view of the case. It was enhanced, no doubt, by the erroneous charge that plaintiff might be held liable, if liable at all, for everything that was done by the police or the city magistrate after the arrest, including the erroneous arraignment of plaintiff before a city magistrate, instead of a justice of the Supreme Court, or a judge of the Court of General Sessions. With these matters appellant had nothing to do, and was not chargeable with damages by reason of them. Gearity v. Strasbourger, 133 App. Div. 701, 118 N. Y. Supp. 257; Whitney v. Hanse, 36 App. Div. 420, 55 N. Y. Supp. 375; Newman. v. R. R. Co., 54 Hun, 335, 7 N. Y. Supp. 560; Locke v. Ashton, 18 L. R. (N. S.) Q. B. Div. 18.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., concurs.