REUBEN R. BASS, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28264.)

Court of Claims, June 28, 1949.

*Charles W. Randolph* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Sidney B. Gordon* of counsel), for defendant.

LAMBIASE, J. Claimant has filed this claim to recover against the State of New York " for the wrongful acts of the State of New York, its officers, agents and employees in unlawfully arresting and detaining the claimant herein and in maliciously and wrongfully procuring the indictment and prosecution of claimant for an alleged robbery and grand larceny." (Claim, par. 2.) He alleges further that " The acts of the State of New York, its officers, agents and employees acting in the course of their employment, consisted of false arrest, false imprisonment, malicious prosecution and kidnapping." (Claim, par. 5.) The claim also alleges that " during his confinement at Albia, claimant was brutally struck in the stomach and abdomen by Trooper

Scoville and was struck across the back of the neck and kicked by other troopers '' (Claim, par. 3), being an assault upon claimant and in violation of claimant's civil rights. The specification of damages as alleged in the claim is as follows: '' Personal injuries and suffering, injury to reputation and defamation of character; indignity, humiliation, shame and disgrace, medical expenses, loss of earnings, legal fees and expenses.'' (Claim, par. 8.)

It appears that on November 11, 1944, at or about twelve o'clock noon, claimant, then a member of the armed forces of the United States of America, was taken into custody in the city of Albany, New York, by the New York State Police and was taken to a police precinct station in said city where at about 1:00 P.M. of that same day he was positively identified by one, Richard W. Weibler, as the man who had on November 3, 1944, held him up and robbed him on a public highway in the town of Schodack, Rensselaer County, New York, said accusations against the claimant being felonies under the laws of the State of New York. Thereafter and at or about 3:30 P.M. of that same day, claimant was taken by the New York State Police from said police precinct station to the New York State Police Barracks at Troy, New York, where he was detained and interrogated by them until about 8:30 P.M., at which time he was fingerprinted and photographed, after which the questioning of claimant by the State police was resumed and continued until about 1:00 A.M., the next day, November 12, 1944, when he was taken by the State police to the office of one, George K. Irish, a Justice of the Peace at Schodack, New York, at whose office claimant arrived at about 2:00 A.M. At that time and place a deposition and an information were drawn and signed, and a warrant was issued by the Justice of the Peace charging claimant with the commission of the crime of robbery, first degree, a felony under the laws of the State of New York, upon which charge claimant was then and there arraigned and to which he pleaded not guilty. Claimant then waived examination and was held by said Justice of the Peace to await the action of the Grand Jury of the County of Rensselaer, after which and at or about 3:00 A.M. claimant, accompanied by the State police, left the office of the Justice of the Peace and was taken to the Rensselaer County Penitentiary at Troy, New York, and there was turned over to the jailer at about 4:30 A.M. In December, 1944, claimant was indicted by the Grand Jury of Rensselaer County for the crimes of robbery, first degree, and grand larceny, second

degree, and also of grand larceny, first degree. Claimant remained in said penitentiary until March 27, 1945, when he was released to the United States Army authorities. He was discharged from the army on August 25, 1945, and returned to the city of Albany, New York. The aforesaid indictments, on motion of the then District Attorney of Rensselaer County, were dismissed on June 17, 1946, without trial.

Upon the trial of this claim we dismissed the alleged causes of action for malicious prosecution (*Hopkinson* v. *Lehigh Valley R. R. Co.*, 249 N. Y. 296; *Agar* v. *Kelsey,* 253 App. Div. 726) and of kidnapping upon the ground that claimant had failed to make out those causes of action. We also dismissed the cause of action for assault as a separate and distinct cause of action for failure to file pursuant to the provisions of the Court of Claims Act, our decision with reference thereto being acquiesced in by claimant's attorney. We stipulated, however, upon said last-mentioned dismissal that we were not foreclosing ourselves thereby from the consideration of any evidence establishing mistreatment or abuse of the claimant pertinent to and forming part of an item of damage of any other cause or causes of action alleged in the claim which were not being then dismissed and were properly before us for consideration.

The State of New York also moved upon the trial of the claim to dismiss the cause of action for false arrest and false imprisonment upon the ground that the claim was not timely filed. Decision was reserved by us on said motion. We have concluded that we cannot agree with this contention of the State, and, therefore, we deny the motion and reserve an exception to the State of New York.

False imprisonment has been defined to be a trespass committed by one against the person of another by unlawfully arresting him and detaining him without any legal authority. (*Snead* v. *Bonnoil,* 166 N. Y. 325.) The original claim alleging the cause of action for false arrest and false imprisonment was filed on September 3, 1946, within ninety days after the indictments were dismissed. It was only when said indictments were dismissed that claimant was discharged from custody and was *in no respect* restrained of his liberty. (*Dusenbury* v. *Keiley,* 85 N. Y. 383, 386; *Worden* v. *Davis,* 195 N. Y. 391; *Tierney* v. *State of New York,* 266 App. Div. 434, affd. 292 N. Y. 523.) We conclude that the filing of the original claim herein was timely, being within ninety days from the dismissal of the indictments and the discharge of claimant from custody.

The arrest on November 11, 1944, was made by the New York State Police without a warrant, and the validity of said arrest has been challenged by the claimant herein. It is an important principle of our political institutions that every person is entitled to immunity from arrest except by authority and for cause. The law has specifically provided when a peace officer may without a warrant arrest a person. (Code Crim. Pro., § 177.) This section provided that a peace officer may without a warrant arrest a person: (1) for a crime, committed or attempted in his presence; (2) when the person arrested has committed a felony, although not in his presence; and (3) when a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it. If an arrest is lacking in these elements of authority to make it, then there has been an unlawful detention of the person arrested, and upon his bringing an action and showing the false imprisonment, the burden of justification is upon the defendant. (*Snead* v. *Bonnoil, supra.*)

Upon the trial of this claim we held that the original arrest made on November 11, 1944, was lawful, and we reiterate that ruling. However, our ruling does not dispose of the instant controversy for there is involved herein another question, to wit: that of an alleged violation by the New York State Police of section 165 of the Code of Criminal Procedure. We pass now to the consideration of that question.

Section 165 of the Code of Criminal Procedure of the State of New York now provides and at all times in the claim mentioned provided that: " *Defendant, upon arrest, to be taken before magistrate.* The defendant must in all cases be taken before the magistrate without unnecessary delay, and he may give bail at any hour of the day or night." Although, as we have hereinbefore held, the original arrest of the claimant was lawful, the foregoing section 165 requires us to determine under the issues herein whether or not there was indeed any unnecessary delay in arraigning the claimant before a Justice of the Peace for " If there was such unnecessary delay, then the arrest itself became unlawful on the theory that the defendants were trespassers *ab initio* and so continued down to the time when the plaintiff was lawfully held under a warrant of commitment, regardless of whether or not the plaintiff was guilty of any crime." (*Hendrix* v. *Manhattan Beach Development Co.,* 181 App. Div. 111, 117; *Pastor* v. *Regan,* 9 Misc. 547, affd. 90 Hun 607; *Snead* v. *Bonnoil,* 49 App. Div. 330, affd. 166 N. Y. 325, *supra*; *Tobin* v.

*Bell,* 73 App. Div. 41; *Davis* v. *Carroll,* 172 App. Div. 729. See, also, *Davern* v. *Drew,* 153 App. Div. 844, affd. *sub nom. Davern* v. *Breen,* 214 N. Y. 681; and *Dumas* v. *Erie R. R. Co.,* 243 App. Div. 792.) In *Pastor* v. *Regan* (9 Misc. 547, 549, *supra*) it is said that: '' The rule laid down in the *Six Carpenters* case, 6 Coke, 146, that if a man abuse an authority given him by the law he becomes a trespasser *ab initio,* has never been questioned.''

What constitutes unnecessary delay depends upon the facts of each case. Did the arresting New York State Police comply with said section 165, and were they justified in law in detaining the claimant, as hereinbefore stated, before arraigning him before a magistrate? We think not.

The conclusion is inescapable, especially when we consider that positive identification of claimant as the man who had held him up and robbed him was made by Mr. Weibler about one hour after claimant's arrest, that the arresting State police officers delayed claimant's arraignment in an attempt to get a confession from him before arraigning him. The evidence of the State of New York may be sufficient to explain why the arraignment of the claimant was delayed, but it does not constitute justification as matter of law therefor within the meaning of section 165 of the Code of Criminal Procedure. (*People* v. *Alex,* 265 N. Y. 192; *People* v. *Kelly,* 264 App. Div. 14.)

It was the duty of the State police to have complied with this statute and not to have violated it. (*Green* v. *Kennedy,* 48 N. Y. 653.) The practice of unnecessarily delaying arraignments has been disapproved by the highest court of this State. (*People* v. *Snyder,* 297 N. Y. 81, 92; *People* v. *Elmore,* 277 N. Y. 397, 404; *People* v. *Mummiani,* 258 N. Y. 394, 396.) The authority and power given to members of the police to arrest persons and to detain them until an examination before a committing magistrate is indispensable to the due execution of the provisions of law and to the protection of the community. The power, however, should be carefully and discreetly exercised. (*Schmeider* v. *McLane,* 36 Barb. 495, 498, affd. 3 Keyes [N. Y.] 568.)

We find, therefore, that although the arrest was lawful in its inception, there was unnecessary delay in the arraignment of the claimant (*Schmeider* v. *McLane, supra*; *Hendrix* v. *Manhattan Beach Development Co.,* 181 App. Div. 111, *supra*), and that by reason thereof the State of New York became a trespasser *ab initio;* and that the ensuing imprisonment became illegal *ab initio* and remained so down to the time when there was a legal arraignment, rendering the State liable for any

injurious consequences to the claimant which resulted therefrom. We are thus brought to the consideration of the damages alleged to have been sustained by the claimant.

Claimant alleges that the particulars of his damages are "Personal injuries and suffering, injury to reputation and defamation of character; indignity, humiliation, shame and disgrace, medical expenses, loss of earnings, legal fees and expenses". (Claim, par. 8.) We shall consider these various items in some detail.

It was testified by claimant that, during the period of his detention and while continuous efforts were being made by members of the State police to induce him to confess, he was compelled to completely disrobe and was kept naked in a cold room in the barracks for about three hours commencing at or about 9:00 P.M. on November 11, 1944, and that during said period of time he was struck and kicked several times by members of the New York State Police, all of which aggravated a previously existing physical condition resulting from claimant's service in the armed forces of the United States of America. The State police deny having treated claimant in any such manner, and they are corroborated by the testimony of Mr. Weibler and Mr. Wentworth, State's witnesses, both of whom testified that they were in the same room in the barracks with the claimant while he was being questioned by members of the State police from about 9:00 P.M. on November 11, 1944, until he was taken to the office of the Justice of the Peace, and that they did not see any member of the State police during that time strike the claimant. Upon the record, therefore, we are of the opinion that claimant has not established that he was struck or otherwise assaulted at any time during the period that he was detained by the State police before being turned over to the jailer at the Rensselaer County Penitentiary, and in this connection we have not been unmindful of the testimony of claimant's brother.

In view of this conclusion we can make no award for medical services alleged to have been necessitated by reason of the assault committed upon him by the State police. Furthermore, the record in this connection is not very convincing. It was claimant's testimony that he was seen for the first time by the penitentiary physician about one week after his arrival at said institution, and that he had a private physician once, to whom he paid the $4, about two months after his arrival there. Neither of these physicians was called by the claimant, and we are thus left without the benefit of their testimony.

Loss of earnings, although alleged in the claim, was withdrawn by claimant as an item of damage during the course of the trial and may not, therefore, be considered. Actually, there was no proof adduced of any such damage. There was also no proof of any damages because of legal fees and expenses paid or incurred because of claimant's false arrest and imprisonment.

As to the remainder of the specification of damages, there is this to be said: By our conclusions herein we have narrowed the period of time for which damages may be awarded as and for a false imprisonment to the time between noon November 11, 1944, and 2:00 A.M., November 12, 1944. The State police wronged the claimant by delaying his arraignment this period of time. It is for this failure to respect the claimant's civil rights that an award must be made. What transpired subsequent to the arraignment of claimant cannot be and is no part of claimant's cause of action for false arrest and imprisonment. Suffering, injury to reputation and to character, indignity, humiliation, shame, and disgrace naturally flowed from claimant's arrest and detention, and persisted after his arraignment before and commitment by the Justice of the Peace. However, claimant's detention became lawful, and the liability of the State of New York, therefore, ceased upon the judicial hearing before and the commitment by the Justice of the Peace. The State of New York, therefore, is not to be held liable on account of said commitment by the Justice of the Peace and for the detention of the claimant following it.

Damages must be limited to those reasonably and proximately occasioned by the wrong. We are unable, however, to find any supporting proof in the record that substantial damages were sustained by claimant by reason of his false arrest and imprisonment by the State of New York. Under such circumstances, an award of substantial damages to the claimant is not justified. We award the claimant, therefore, the sum of $250 on his cause of action for false arrest and imprisonment.