Rose Ross, as Executrix of Carmine Ross, Deceased, et al., Respondents, v Village of Wappingers Falls et al., Appellants.

Second Department, July 3, 1978

### APPEARANCES OF COUNSEL

*J. George Spitz (Samuel S. Slavitt* of counsel), for appellants.

*Dempsey & Spring, P. C. (James Dempsey* and *Emanuel Thebner* of counsel), for respondents.

### OPINION OF THE COURT

*Per Curiam.*

This is an action to recover damages for malicious prosecution and false imprisonment. Defendants appeal from a judgment of the Supreme Court, Dutchess County, which, upon a

jury verdict, is in favor of plaintiff Rose Ross, as executrix of the estate of Carmine Ross, in the principal sum of $100,000 ($50,000 on each cause of action) and Rose Ross, individually, in the principal sum of $100,000 ($50,000 on each cause of action) as compensatory damages.

The judgment should be reversed, on the law, and a new trial had with respect to the issue of damages only, unless plaintiffs Rose Ross, as executrix of the estate of Carmine Ross, and Rose Ross, individually, stipulate to reduce the verdicts in their favor to $25,000 on each cause of action, for a total sum of $50,000 as to each plaintiff, and to the entry of an amended judgment accordingly, in which event the judgment in their favor, as so reduced and amended, should be affirmed.

The complaint states two causes of action on behalf of each plaintiff—one for false imprisonment and the other for malicious prosecution. The jury found for each plaintiff in the sum of $50,000 on each cause of action. We affirm the jury verdict as to liability on each count on behalf of each plaintiff, but we find that the damages awarded were excessive to the extent indicated.

The cause of action based upon malicious prosecution requires no comment. However, since we find precedent sparse with regard to the cause of action for false imprisonment predicated upon the factual circumstances here involved, we believe it noteworthy of comment.

In February, 1969 a coffee shop owned by Carmine and Rose Ross (hereafter plaintiffs) was raided by the village police and they were arrested on a charge of maintaining a criminal nuisance (Penal Law, § 240.45, subd 2). They were arraigned before a local Magistrate and transported to the Sheriff's office, where they were questioned, fingerprinted and photographed. They were finally released after posting bail of $1,000 each.

Almost three years later, with plaintiffs constantly seeking a trial and disposition of the charges, the charges were dismissed without a trial, and on consent of the District Attorney, due to insufficient evidence.

Each plaintiff, thereafter, sued for malicious prosecution and for false imprisonment, seeking $50,000 on each cause of action against the Village of Wappingers Falls and its Police Captain, Joseph Costa. After a six-day jury trial, the jury unanimously returned a verdict in favor of the plaintiffs in

the full amount on each of the causes of action, totaling $100,000 for each plaintiff.

The facts underlying the raid and arrest are as follows:

In March, 1963 Carmine and Rose Ross opened a coffee shop and luncheonette known as Falls Coffee Shop, on East Main Street in the Village of Wappingers Falls, New York, which they owned and operated until the death of Carmine Ross. The business was thereafter continued by his widow, Rose.

The coffee shop served no alcoholic beverages; it served breakfast, lunch, dinner, ice cream, sodas, coffee, etc. The shop was busy seven days a week and, among its patrons, were political figures of the village and town, firemen, school teachers, professional people and youths and adults of various types and descriptions.

For a period of time prior to February, 1969, numerous complaints were made to the Mayor of the village and to the village police to the effect that a substantial number of teenagers, then described as a "hippie element", had developed the habit of congregating on the sidewalk in front of and adjacent to the entrance to the coffee shop. Mary Ross, one of the two daughters of Carmine and Rose, testified that her father made complaints about these people hanging around, and that she, her sister and her mother had also made complaints. A number of the teenagers were reputed to be drug users.

In many instances, following the receipt of these complaints by the local police, said police (of which defendant Costa was commanding officer) would appear and disperse the congregants. If any teenagers would then go into the coffee shop, they were allowed to remain inside as long as they purchased a soft drink or some other item.

In the early part of 1969 the village Mayor, Police Captain Costa and the Chief of Detectives met and discussed the problem created by the congregants. As a result of those discussions, it was agreed that various arrests and raids should be simultaneously made and conducted at the Ross' coffee shop and at three other locations in Dutchess County, about which similar complaints had been received.

Shortly thereafter, on the basis of alleged investigations conducted by him, two separate informations were prepared for Captain Costa, to be signed and sworn to by him, charging the Rosses with maintaining a criminal nuisance in that they

allowed various persons to gather in and about their coffee shop for the purpose of engaging in unlawful conduct, to wit, the distribution and use of certain narcotic drugs.

Costa's affidavits against Carmine and Rose Ross state, in part:

"Between February 10 & February 19, 1969 * * * the defendant * * * did commit the crime of: Maintaining a Criminal Nuisance * * *

"The source of your informant's information and grounds for his belief is *his investigation* and * * * and *personal observations* made by your informant and officers under the command of your informant" (emphasis supplied).

However, Costa had made no personal observations of the use or dealing of drugs in the coffee shop; nor had he ever received any information from any member of his department of any such dealings that were knowingly tolerated or permitted by the Rosses.

Moreover, the affidavits were typed as being sworn to on February 18, 1969. This date is crossed out and the "22nd" inserted in its place. The arrest warrants are dated February 20, 1969 for Carmine Ross and "— day of February, 1969" for Rose Ross. Thus, the arrest warrants were executed either two days *before* the swearing of the affidavits, if the date of February 22, 1969 is accepted, or the warrants were sworn to on February 18, 1969 when Costa claimed the crime was committed between February 10, 1969 and February *19,* 1969.

On the basis of those informations, two separate warrants for the arrest of Carmine and Rose Ross were issued by the Village Justice. On February 22, 1969 a raid of the coffee shop was conducted by Police Chief Costa and members of his staff. Costa placed Rose Ross under arrest and after Carmine Ross was awakened from his nap, he, too, was arrested.

As part of the raid several teenage customers were arrested, but no adult patrons were arrested. A warrantless search was also conducted by Costa, who dislodged booths, seats and cushions, tore menus and emptied sugar containers. The search revealed no drugs or narcotics.

The Rosses were transported by car to the local court about two blocks away from the coffee shop. They were arraigned by the Village Justice and held for trial with bail fixed at $1,000 each. They were then taken to the Sheriff's office at the Dutchess County Jail where they were fingerprinted, photo-

graphed and assigned numbers. After posting bail bonds, the Rosses were returned by car to their business premises at approximately 6:30 P.M. Law officers were still stationed therein.

The case against Carmine and Rose Ross was adjourned several times. On December 15, 1971 the Village Justice granted the motion of the Rosses' attorney to dismiss the subject informations on the ground of legal insufficiency. The motion was granted upon the consent of the Dutchess County District Attorney. Following the dismissals, the within action was instituted. On December 7, 1974 Carmine Ross passed away and, upon stipulation, Rose Ross, as executrix of his estate, was substituted as a party plaintiff.

■■ The defendants contend that the arrest of both plaintiffs was made pursuant to two warrants issued by a court of competent jurisdiction and, therefore, the causes of action seeking damages for false imprisonment must fall. This is a correct statement of the law as applied generally *(Broughton v State of New York,* 37 NY2d 451; *Marks v Townsend,* 97 NY 590, 597; *Sleight v Ogle,* 4 ED Smith 445). However, we hold that the afore-mentioned general principle of law is not controlling in the case at bar. An arresting officer in the ordinary course of events may rely upon the fact that he possesses a judicially issued arrest warrant and thus be insulated from a claim of false imprisonment. However, he may not so insulate himself from such a claim where he has personally procured the issuance of the warrant based upon his own false and unsubstantiated statements. We have been unable to find any case directly in point. However, we do note that there are two types of cases which have followed this same direction. In *Holley v Mix* (3 Wend 350), the court held that a cause of action for false imprisonment was stated against a constable when it was alleged that he had executed an arrest warrant for the purpose of extortion. There are other cases which have held that an action for false imprisonment may lie when events following an otherwise valid arrest constitute conduct on the part of the police officer which is oppressive or illegal (see *Dumas v Erie R. R. Co.,* 243 App Div 792; *Bass v State of New York,* 196 Misc 177). In *Bass,* the court held (pp 182-183): "We find, therefore, that although the arrest was lawful in its inception, there was unnecessary delay in the arraignment of the claimant *(Schmeider v McLane* [36 Barb 495, affd 3 Keyes

(NY) 568] *supra; Hendrix v Manhattan Beach Development Co.,* 181 App. Div. 111, *supra),* and that by reason thereof the State of New York became a trespasser *ab initio;* and that the ensuing imprisonment became illegal *ab initio* and remained so down to the time when there was a legal arraignment, rendering the State liable for any injurious consequences to the claimant which resulted therefrom."

■ In the instant case, although there were warrants apparently valid on their face, the evidence at the trial was to the effect that the affidavits upon which the warrants were procured contained knowingly false statements by the police officer. Therefore, in conformity with the foregoing line of authority, we hold that such evidence made the officer a trespasser *ab initio* and, hence, he could not obtain any immunity from the warrants.

We are mindful of the fact that often there is a fine line among causes of action premised on false imprisonment, the abuse of process and malicious prosecution (see *Board of Educ. v Farmingdale Classroom Teachers Assn., Local 1889, AFT, AFL-CIO, 38 NY2d 397).* We hold that the evidence in the case at bar is sufficient to sustain a cause of action for false imprisonment on behalf of both plaintiffs.

HOPKINS, TITONE and HAWKINS, JJ., concur in Per Curiam opinion; MOLLEN, P. J., and SHAPIRO, J., concur in Per Curiam opinion but vote to further reduce the damages awarded to the plaintiffs to the sum of $12,500 on each cause of action, for a total sum of $25,000 as to each plaintiff, noting that punitive damages were not claimed either in the complaint or on the trial.

Judgment of the Supreme Court, Dutchess County, entered May 3, 1977, reversed, on the law, and new trial granted with respect to the issue of damages only, with costs to abide the event, unless within 20 days after entry of the order to be made hereon, plaintiffs Rose Ross, executrix of the estate of Carmine Ross, and Rose Ross, individually, shall serve and file in the office of the clerk of the trial court written stipulations consenting to reduce the verdicts in their favor to $25,000 on each cause of action, for a total sum of $50,000 as to each plaintiff, and to the entry of an amended judgment accordingly, in which event, the judgment in their favor, as so reduced and amended, is affirmed, without costs or disbursements.